[No. 506.    August 24, 1892.]

ANTONIO CORTESY, PLAINTIFF IN ERROR, v. TERRITORY OF NEW MEXICO, DEFENDANT IN ERROR.

SELLING LIQUORS ON SUNDAY—PENAL STATUTES, CONSTRUCTION OF.— Chapter 26, Laws, 1887, amending section 933, among other things, by omitting the words "selling * * * or liquors, or any other property," and imposing the penalty on anyone found on Sunday "engaged in any labor, except works of necessity, charity, or mercy," did not restrict the ordinary meaning of the words "engaged in any labor," and any person selling liquors on Sunday is engaged in "labor," within the meaning of the amendatory act.

ERROR, from an order overruling a motion in arrest of judgment against defendant for selling liquor on Sunday, to the Fifth Judicial District Court, Socorro County.   Judgment affirmed; O'BRIEN, C. J., dissenting.

SUMMERS BURKHART and NEILL B. FIELD for plaintiff in error.

In the construction of statutes the intention of the legislature must prevail, and where it is plainly perceivable or ascertained with reasonable certainty, the language of the statute must be given such a construction as will carry that intention into effect, even though contrary to the letter.   Endlich on Interpretation of Stats., sec. 295, and cases cited; Potter's Dwarris on Stats. & Const. 179; Suth. Stat. Con., secs. 218, 240, 246, and cases cited.  Sedg. Con. Stat., p. 194; 1 Kent,

462; Noble v. State, 1 Greene (Iowa), 325; Somerset v. Dighton, 12 Mass. 383; 4 Sawy. 302, 317; Reiche v. Smythe, 13 Wall. 162; Smythe v. Fiske, 23 Id. 380; Smith v. People, 47 N. Y. 330.

The meaning of general words in a statute must be restricted whenever necessary to carry out the legislative intention. Reiche v. Smythe, 13 Wall. 162.

To ascertain the legislative intent, all statutes in pari materia are to be construed together as though they constituted one act. Sedg. Con. Stat., pp. 209–212, and note (a); Suth. Stat. Con., sec. 283, and cases cited; Endlich on Int. Stats., sec. 43, and cases cited; United States v. Freeman, 3 How. 556.

For that purpose, repealed statutes are in pari materia, and are to be considered, especially when expressly referred to in the act to be construed. Endlich, Int. Stat., secs. 48, 49, 50, and cases cited; Ham v. Board of Police, 142 Mass. 90.

When part of an act has been repealed, although of no operative force, it must still be considered in construing the rest. Endlich, Int. Stat., secs. 49, 50, and cases cited; Ex parte Crow Dog, 109 U. S. 556; Bank v. Collector, 3 Wall. 495.

Where acts are in pari materia, if the same word is used in both, a distinction made in one is a legislative exposition of the sense in which it is to be understood in the other. Potter's Dwarris, 191; Reiche v. Smythe, 13 Wall. 162; Robbins v. R. R. Co., 32 Cal. 472.

Where two acts are in pari materia, it will be presumed, if the same word be used in both and a special meaning given it in the first, that it was intended it should receive the same interpretation in the latter act, in the absence of anything to show a contrary intention. Potter's Dwarris, 191; Reiche v. Smythe, 13 Wall. 162.

A word used in an amendatory statute is presumed

to be used in the same sense as in the statute amended. Robbins v. R. R. Co., 32 Cal. 472.

When two words or expressions are coupled together, one of which generically includes the other, the more general term is used in a meaning excluding the specific one. Endlich, Int. Stat., sec. 396, and cases cited; Suth. Stat. Con., sec. 266, and cases cited; Reiche v. Smythe, 13 Wall. 162.

When a section, expressly amendatory of another section of a statute, purports to set out in full all it is intended to contain, any matter which was in the original section, but is not in the amendatory statute, is repealed, by the omission. Endlich, Int. Stat., sec. 196, and cases cited; State v. Ingersoll, 17 Wis. 631; Goodno v. Oshkosh, 31 Id. 127; Brietung v. Lindauer, 31 Mich. 217.

An amendment repeals all of the section not embraced in the amended form. Suth. Stat. Con., sec. 133, and cases cited; Endlich, Int. Stat., sec. 196, and cases cited; Wakefield v. Phelps, 37 N. H. 295.

When a statute is revised or one act framed from another, some parts being omitted, the omitted parts are not to be revived by construction, but must be considered as annulled. Ellis v. Paige, 1 Pick. 45.

EDWARD L. BARTLETT, solicitor general, for the territory.

If the act of 1887 has any force at all, it must be construed with section 933, Compiled Laws, in so far as it is not contradicting; where it is, it fails. Postmaster General v. Early, 12 Wheat. 147.

Whether a statute is repealed, is a matter for judicial construction, not of legislative statement. United States v. Clafin, 97 U. S. 549.

The intent of the statute governs, but that intent must be discovered in the statute itself. Suth. Stat. Con., sec. 234, 237–239, and cases cited.

The title of the act may sometimes be resorted to as an aid in ascertaining the legislative intent.   Wilson v. Spaulding, 19 Fed. Rep. 304.

In considering the intent it is permitted to consider the mischief to be removed or the necessity which induced the enactment.   Suth. Stat. Con., sec. 292, and cases cited; People v. Sweetzer, 1 Dak. 295–301.

The act of 1887 and section 933, Compiled Laws, can both stand together.   Suth. Stat. Con., secs. 147, 132, 143, 101.

As to arrest of judgment, see 12 Am. & Eng. Encyclopedia of Law, p. 147 B., and cases cited; 1 Bish. Crim. Proc., sec. 1282.

As to what constitutes the record, see U. S. v. Barnhart, 17 Fed. Rep. 581; Warren v. Flagg, 2 Pick. (Mass.) 448; Bouv. Law Dict., title "Record;" Black Law Dict., title "Record;" 1 Bish. Crim. Proc., secs. 1341–1347.

The writ of error only reaches errors apparent on the face of the record; it may be employed where the error is in the indictment, the verdict, sentence, or any other part of the record.   1 Bish. Crim. Proc., sec. 1368.

"The supreme court shall examine the record— and on the facts therein contained, alone, shall award a new trial, reverse or affirm the judgment."   Compiled Laws, sec. 2190; Laws, 1889, pp. 3, 4.

The plea in abatement, motion to quash, or demurrer should have been made before arraignment to make the record complete.   4 Am. & Eng. Encyclopedia Law, p. 764.

SEEDS, J.—The plaintiff in error was indicted under chapter 26, Laws, 1887, for violating the Sunday law.   He pleaded guilty, and then filed a motion in arrest of judgment, alleging (1) that the indictment in this case charges no public offense against the laws of the territory; (2) that it is not an offense against the

laws of this territory to buy or sell goods, wares, or
merchandise, chattels, or liquors, or any other kind of
property, on the first day of the week, called "Sunday."
The motion was overruled, and he was fined, where-
upon he prosecuted his appeal to this court. In a few
words, the question involved in this appeal is, is there
any law in this territory against the sell-
ing of goods, wares, and merchandise,
including liquors, upon the first day of
the week, called "Sunday?" The indict-
ment in its charging part reads: "On the said eighth
day of May, A. D. 1892, being the first day of the
week, called 'Sunday,' did * * * unlawfully engaged
in the labor of selling wine, beer, liquor, and merchan-
dise, said labor being neither the works of necessity,
charity, nor mercy, contrary to the form of the statutes
made and provided, and against the peace and dignity
of the territory of New Mexico." The law under
which the indictment is found reads as follows:   Chap-
ter 26, Laws, 1887: "Section 1.   That section nine
hundred and thirty-three of the Revised Statutes of
the year 1884 be, and the same hereby is, amended to
read as follows:   Any person or persons who shall be
found on the first day of the week, called 'Sunday,'
engaged in any sports, or in horse racing, cock fighting,
or in any other manner disturbing any worshiping
assembly, or private family, or attending any public
meeting or public exhibition, excepting for religious
worship or instruction, or engaged in any labor, except
works of necessity, charity, or mercy, shall be punished
by a fine not exceeding fifteen dollars, nor less than five
dollars, or imprisonment in the county jail of not more
than fifteen days, nor less than five days, in the discre-
tion of the court, upon conviction before any district
court." It is quite apparent that, unless a forced
construction is given to the words, that is, unless they
are much narrowed from their common acceptation,
the words "engaged in any labor" fully cover the

*Selling liquors on Sunday: penal statutes, construction of.*

charge in this indictment.   Counsel for plaintiff freely admit this.   But they contend that this law is an amendment of section 933 of the Compiled Laws, and when read in connection with it, that it becomes at once evident that the words are narrowed, and that the words used in the charging portion were in section 933, and are left out of the law now in force; hence the intent of the legislature to eliminate these words, and narrow the words "any labor," is unquestionable, and this court must so declare.   It will be necessary to set out section 933 in full to understand the contention perfectly.   It is as follows:  "Sec. 933.  Any person or persons, who shall be found on the first day of the week, called 'Sunday,' engaged in any 'games' or sports, or in horse racing, cock fighting, 'dancing,' or in any other manner disturbing any worshiping assembly, or private family, 'or in buying or selling any goods, wares, or merchandise, chattels, or liquors, or any other kind of property,' or in holding or attending any public meeting, or public exhibition, except for religious worship or instruction; or engaged in any labor, except works of necessity, charity, or mercy; 'or who shall keep open any store, shop, or office, or other place of business, or place for the display of goods, wares, or merchandise,' shall be punished by a fine not exceeding fifty dollars, nor less than ten dollars, for the first offense, and for the second or any subsequent offense by a fine of not less than twenty-five dollars nor more than one hundred dollars, or by imprisonment of not less than five nor more than twenty days, in the discretion of the court or justice, upon conviction before any district court or justice of the peace; provided, that none of the provisions of this act shall be construed to prevent travelers from prosecuting their journey, and keepers of ferry boats, livery stables, hotels, and restaurants, from accommodating travelers, or from supplying their wants, or to prevent the proprietors of

hotels or restaurants from supplying the wants of their boarders or lodgers, on said day; barbers may also pursue their vocation; and provided, further, that butchers and bakers may keep their establishments open, and sell meat, bread, and like articles, but shall not sell liquors, or general merchandise, and apothecaries may likewise keep open their places of business, and sell and deliver drugs or medicines and surgical instruments and medical apparatus, but no other articles, on said day.''

The present statute is exactly like section 933, excepting in those portions quoted, in the amount of the fines and the proviso. The proviso is entirely left out in the law under consideration. Now, the plaintiff in error insists that, by omitting from the present statute the words ''games or,'' ''dancing,'' ''or in buying or selling any goods, wares, or merchandise, chattels, or liquors, or any other kind of property, or in holding or,'' and ''or who shall keep open any store, shop, or office, or other place of business, or place for the display of goods, wares, or merchandise,'' it is evident that the legislature intended to exempt from punishment all who engaged in games, dancing, selling liquors, or other merchandise upon Sunday. That is, while the words, ''any person or persons who shall be found on the first day of the week, called 'Sunday,' engaged in any labor,'' are clear, explicit, and unambiguous— are so plain that a man of ordinary intelligence can not err as to their meaning; yet, as in the original section 933 there followed after those words the other words, ''or who shall keep open any store, shop, or office, or other place of business, or place for the display of goods, wares, and merchandise,'' and there was omitted the other clause, ''or in buying or selling any goods, wares, or merchandise, chattels, or liquors, or any other kind of property,'' it is equally as clear and explicit that the legislature intended to exempt those

acts from the penalty of the statute. So that now, in this territory, the stores and other places of business for the display or selling of any goods, wares, and merchandise, and liquors, may be kept open upon Sunday the same as upon other days, but the farmer must not lift a hoe or pull a weed. The gambler may run his den of infamy and vice under the protection of law, but if a father and his children should engage in some innocent sport, in the neighborhood of a religious gathering, he and they would be amenable to the penalty of this act. If any person, by engaging in sports, horse racing, cock fighting, or in any other manner, excepting games or dancing, disturb any worshiping assembly or private family, it is unlawful; but, upon the contention of the learned counsel for the plaintiff, if any person, by running a gambling house or a dance house disturb a religious gathering or private family, the law is powerless to act. More, if their contention is correct, then while it would be generally true that the disturbing of a religious gathering or private family in any manner whatever would be illegal upon any day, yet under their insistence it must be believed that the legislature, by passing the latter statute, intended, by omitting the words "games" and "dancing" from its enumeration of those things which should not be done upon Sunday to the disturbance of worshiping assemblies and private families, now the dance houses and gaming dens may do what heretofore was illegal. And this, it is insisted, is true liberty, and escaping from the imbecility of sumptuary regulations!

The question raised is one of legislative intention. As a general proposition, the law is that, where there is no uncertainty or ambiguity in the language of the law, the intention of the lawmakers is to be arrived at by the language used. Endl. Interp. Stat., secs. 4–6; Suth. Stat. Con., sec. 237. Under this rule of law, there could be no difficulty, for plainly, and by admis-

sion of counsel, the selling of liquors would be comprehended in the words "engaging in any labor." But the statute under consideration is an amendment to a section of the Compiled Laws, and it is to be presumed that the legislature had a purpose in amending the law, and hence both the present statute and the one amended must be considered together in arriving at the legislative intent, upon the assumption that there is a necessity for construction in order to arrive at that intent. Suth. Stat. Con., secs. 133, 283, 286. It is contended that as the words "any labor" are used in both statutes, and that in the first, or section 933, the words "or in buying or selling any goods, wares, or merchandise, chattels, or liquors, or any other kind of property," are also used, it must be held that the words "any labor" do not embrace the acts included in the latter clause; that the words "any labor," therefore, have a specific and limited meaning, which do not include the latter clause. Hence, when the words "any labor" are used in the present statute, it is with the same meaning as in section 933, which excludes the clause in regard to selling liquors, and, that clause not being in the later statute, it must be supposed that those acts covered by it are excluded from the intention of the statute. It must be conceded at once that, were there no other canons of construction admissible in such a case as this, the contention of the plaintiff in error would be unanswerable. Where two acts are in pari materia, it will be presumed, if the same word be used in both, and a special meaning were given it in the first act, that it was intended it should receive the same interpretation in the later act, in the absence of anything to show a contrary intention. Reiche v. Smythe, 13 Wall. 162. .

This case fully sustains the principle for which the plaintiff in error is contending. The question presents itself, though, is this the only principle which is to be invoked here? And, if it should transpire that the

invoking of this principle would lead to palpable absurdities, convict the legislature of imbecility, hoist upon this territory a law which would be as "unsubstantial as a dream," "a delusion and a snare," and would announce to the world that the people of this territory had turned in contempt from the teachings of the ages and the legislation of every commonwealth in this nation, must it not cause us to pause and consider if there are not other principles which might be applicable, which would not lead to such results? We freely admit that if, under known canons of construction, we can not arrive at any other conclusion than that the legislature of this territory, at its twenty-seventh session, intended to practically wipe out the Sunday law and annihilate it as a civil rest day; that it intended to say to the farmer, the drayman, the carpenter, "If you water the roses or turn the glebe, if you draw a box of goods upon the highway, or if you lift a hammer in toil, you must suffer fine or imprisonment," while to the saloon keeper, the gambler, the bawdyhouse inmates, and the lepers of society generally it says, "You may ply your business unmolested and under our benediction and protection,"—then we will say so; for it is not our province to legislate for our people, nor by a strained construction to uphold the good name and reputation of a coordinate branch of this government. But we do not see that we are under any such necessity. There are rules for arriving at legislative intent which must first be taken into consideration before dealing with the one so strenuously contended for by counsel for plaintiff in error. It is a cardinal rule of construction that, when the language of the statute is plain and unambiguous, that then interpretation is needless. Suth. Stat. Con., sec. 234. If, then, we should adopt this rule for our guide in the case before us, there would no room for construction. The acts complained of were labor, and they were per-

formed on Sunday; hence the intention of the legislature is too plain to be misunderstood.

But it is urged that it is a penal statute, and should be strictly construed; no persons or acts ought to be brought within the terms of the statute who or which by a strict construction can be left out. Upon this point we quote the following from the supreme court of the United States as timely and wise: "We are not unmindful that penal laws are to be construed strictly. It is said that this rule is almost as old as construction itself. But whenever invoked it comes attended with qualifications and other rules no less important. It is by the light which each contributes that the judgment of the court is to be made up. The object in construing penal as well as other statutes is to ascertain the legislative intent. That constitutes the law. There can be no construction where there is nothing to construe. The words must not be narrowed to the exclusion of what the legislature intended to embrace, but that intention must be gathered from the words, and they must be such as to leave no room for a reasonable doubt upon the subject. It must not be defeated by a forced and overstrict construction. The rule does not exclude the application of common sense to the terms made use of in the act in order to avoid an absurdity, which the legislature ought not to be presumed to have intended." U. S. v. Hartwell, 6 Wall. 385, 395. The rule which requires courts to so construe statutes as to avoid absurdities and mischievous consequences, when the language does not imperatively require such construction, is not only well settled by adjudication, but is the emphatic expression of common sense. Suth. Stat. Con., sec. 238. Endlich, the English author, expresses this rule of presumption with great emphasis, thus: "The presumption against absurdity in the provision of a legislative enactment is probably a more powerful guide to its construction than even the pre-

sumption against unreason, inconvenience, or injustice." Endl. Interp. Stat., sec. 264. When, then, a statute is, upon its face, plain, reasonable, just, and in strict accordance with the best thought and enlightenment of the age, ought a court to go back to another statute in pari materia, and read into the existing law a sense which will make of it, not by presumption simply, but in fact, an absurdity, an injustice, an unreasonable and farcical law, a law that flies in the face of enlightenment, morality, decency, and the very spirit, not alone of the age, but of the common law? We think not. But do these consequences follow the contention of the learned counsel for plaintiff in error? We think that they do. Already we have outlined some of the absurd consequences, not only absurd, but, when fully considered, appalling. Look at them again. Keep in mind the contention that words in section 933 have received a definite meaning which, when used in a similar statute afterward, and not modified, must have the same construction as in the amended section. So, when the statute says that no religious gathering or private family shall be disturbed by certain acts "or in any other manner," the latter words do not contain the specific acts enumerated; and hence when the statute under consideration leaves out the words "games" and "dancing," the legislative intent is that private families and religious gatherings may be disturbed by those means, and there is no redress, although they may very reasonably be considered as comprehended in the words, "or in any other manner."

Under this contention it would be possible to keep open any place of business for the display of, or the buying or selling of, goods, wares, merchandise, chattels, liquors, or any other kind of property; but it would be a crime to open the doors of a manufacturing establishment, to operate a mine or a railroad, to attend to

agricultural labor. In short, about everything which could by any means be considered disreputable, demoralizing, and dangerous to good government and morals would be legalized by this contention, while about everything that has in it nothing inherently wrong would be condemned by legal inhibitions. But this is not all. In the argument the learned counsel did not consider the principle invoked in its bearing upon the absence of the proviso from the present law. If their contention is correct in principle, and should be invoked in this case to ascertain the legislative intent, then that principle ought to be the touchstone by which to ascertain that intent as to the whole law. Now, if certain words, clauses, or phrases in section 933 are qualified by other words, clauses, or phrases, and in the law under consideration the qualifying terms are dropped, it is clear that the legislature intended to dispense with the effect of the qualifying terms. We then have this state of affairs: that upon Sunday it is illegal for travelers to prosecute journeys; for keepers of ferry boats, livery stables, hotels, and restaurants to accommodate travelers or to supply their wants; it is illegal for butchers or bakers to keep their establishments open to sell meat, bread, or like articles, but it is perfectly legal for them to keep their establishments open to sell liquors or general merchandise. Apothecaries must now close, unless they wish to dispense liquors. It will be observed, then, that by giving the present law the construction contended for by plaintiff in error, there arises a series of absurdities and mischievous consequences which outrage all ideas of common sense, and fix upon a coordinate branch of this government the stigma of intending this outrage, which intention does not appear from the language of the law itself. But this contention is not condemned alone by this view of the case. It will not be declared by the courts that the legislature intended a law to have

a construction which strikes at fundamental principles of government,—at those principles which are back of all written enactments, and upon which Anglo-Saxon and Latin civilization alike is based. This law was originally declared to be "An act to provide for the proper observance of the Sabbath," and the amending body of the act can not deprive the act of that intention, unless clearly so intended. If we place upon it the construction asked for, then this act should be named "An act for the desecration of the Sabbath." Whatever may be individual opinions as to the question of religion, and the particular form of it known as "Christianity," yet the legal fact must be recognized by every one that this nation, and every portion thereof, is nominally Christian. Rector, etc., of Holy Trinity Church v. U. S., 12 Sup. Ct. Rep. 511.

As a Christian nation, it has always been the policy of the legislatures to protect the sanctity of the Sabbath; to pass appropriate laws for the proper observance of the Sabbath; and, unless the law is so specific as to demand a construction against such view, it would be a rash court that would give its adhesion to such a construction. It must also be considered in this connection that the whole trend of modern thought, feeling, and legislation is toward the curtailing of the admitted evils of the liquor traffic. There is not a commonwealth in this great nation but has passed restrictive legislation upon the liquor traffic. The nation itself has supplemented the legislation of the states wherever its laws might nullify those of the states. All, or nearly all, of the supreme courts of the states, and the supreme court of the United States, have condemned the unrestricted traffic of liquor in vigorous terms. The nations of England, Germany, France, and Sweden have been forced to appoint commissions to take into consideration the deleterious effects of the traffic upon their people, and to pass laws for the purpose of cur-

tailing its evil consequences. Now all this may be wrong and mistaken. It may be sumptuary legislation, and to be condemned. It may be the evidence of retrogression instead of progression. It may be all this, and more. With the abstract view we have no occasion here to take issue. For us it is enough that, without a dissenting voice, the civilized world has and is condemning the unrestrained traffic in liquors, and yet, with this fact before us, and the other fact, equally as evident, that the nation and this territory are Christian, and called upon to pay a decent respect to the Sabbath, we are called upon to place a construction upon an act, ostensibly passed for the protection of the Sabbath, and which in its language plainly asserts that very idea, which will, in effect, break down the Sabbath, and also throw open the day to the unrestrained evils of the liquor traffic. There is not a canon of statutory construction in the books which ever contemplated such an outrage upon common sense. It must be constantly kept in mind that under the very first canon of construction there is really nothing to construe, for the words of the statute are plain and free from ambiguity. That it is only when we are asked to read the law in the light of another statute that the confusion becomes worse confounded, and that the law bristles with absurdities, and runs counter to the great fundamental principles of the government, and in the very teeth of the supposed spirit of the age. Why did the legislature change the law? Clearly to make it more definite and certain, and to reduce the penalties, that it might the more readily be enforced. The very terms of the original statute, with its proviso, were so uncertain and susceptible of so many refined distinctions, that it was clearly in the interest of the law to curtail the language, and bring it into harmony with the laws of other states on the subject. "Every change of phraseology, however, does not indicate a change of substance and intent.

The change may be made to express more clearly the same intent, or merely to improve the diction." Suth. Stat. Const., sec. 256.

LEE and McFIE, JJ., concur.

O'BRIEN, C. J. (dissenting).—Notwithstanding the foregoing vigorous argument of the court, redolent with the fervent eloquence of of my brother SEEDS, I reluctantly dissent from the conclusions reached. What induced the twenty-seventh session of the legislative assembly of New Mexico to remove the safeguards thrown around the Christian Sabbath by a preexisting law of the territory, is not the question submitted. Has it done so, is the only point that the court is called upon to determine in this case. Its power is not denied. Its right to do so we may dispute as moralists, but can not settle as a court, when the intent is obvious. Potuit, voluit, fecit. The word labor in the amendatory act, when considered in connection with the section amended, means nothing more or less than manual, servile labor. It would be sheer nonsense to call a saloon keeper or merchant a laborer or laboring man. It is much safer to permit the legislature to outrage the religious spirit of the age and country for a short period than to nullify its act by a forced judicial construction violative of every canon of statutory interpretation.

In my opinion, the judgment in obedience to the clearly expressed will of the legislature ought to be reversed.