CASES DETERMINED

BY THE

# SUPREME COURT

OF THE

# STATE OF MISSOURI,

AT THE

## APRIL TERM, 1893.

( *Continued from Volume 116.* )

THE STATE *ex rel.* ZIEGENHEIN V. THE ST. LOUIS & SAN FRANCISCO RAILWAY COMPANY, *Appellant.*

In Banc, June 19, 1893.

1. **Railroad Taxation**: LOCAL PROPERTY: STATUTE. Property purchased by a railroad company for future yard purposes and in the possession of the company's lessees and used by them for manufacturing purposes with the right reserved to the lessees to remove their building at the expiration of the lease does not for purposes of taxation fall within Revised Statutes, 1879, section 6876, but within section 6866 and is assessable thereunder as local property.

2. **St. Louis Charter**: LEGISLATIVE POWER. The legislature can change or amend the charter of the city of St. Louis.

3. **Railroad Property, Taxation of**: GENERAL LAW. Taxes on railroad property in the city of St. Louis should be extended and collected in the manner prescribed in the general law. Revised Statutes, 1879, ch. 145, art. 8.

4. ———: ———. Said article 8, of the general law was passed in a revised bill and provides the method for the entire state for extending and collecting taxes on railroad property.

VOL. 117—1 (1)

*Appeal from St. Louis City Circuit Court.*—HON. JACOB KLEIN, Judge.

REVERSED.

*E. D. Kenna* and *Adiel Sherwood* for appellant.

(1) The land described in the petition is a part of the St. Louis & San Francisco Railway, so inseparably connected therewith that it has no independent value and was therefore included in the assessment made by the state board of equalization. That defendant paid all taxes levied upon its property assessed by the state board is admitted. (2) If it be conceded that this is "local property," subject to assessment under the provisions of section 7728 (Revised Statutes, 1879, sec. 6876), still it will be found that there was not the slightest attention paid to the requirements of the statute in the levy and the steps taken to collect these taxes in this: (a) They are not included in the separate railroad tax book (assuming that book number ten, is such a book as is required by section 7733. Revised Statutes, 1879, sec. 6881. (b) They were certified to the officer of the railroad company as required by section 7734. Revised Statutes, 1879, sec. 6882. (c) No book, separate or otherwise, containing these taxes was ever delivered to the comptroller or to the collector as required by section 7735 (Revised Statutes, 1879, section 6883), and hence, there has never been in the hands of the relator any warrant for the collection of these taxes. (3) Plaintiff made no case, even if the tax books were regular. (a) This suit should have been instituted and prosecuted under the provision of article 8, and not under article 6, of the revenue law, and under article 8, no case was made. (b) The tax bill not being made evidence by the statute, it was

evidence of nothing but its issuance, and plaintiff was required to make affirmative proof of every jurisdictional fact necessary to show a valid exercise of the taxing power.  (c) There was no averment or evidence of the passage or delivery to the president of the board of assessors of an ordinance making a levy of the taxes sued for as required by section 27, article 5, of the scheme and charter, and by section 7730.  Revised Statutes, 1879, sec. 6877.  (d) If plaintiff contends that the provisions of article 8, as to the manner of the collection of these taxes do not apply—then, in order to recover, a compliance with article six, must be proven and there is a total failure of such proof in this.   There is no proof that any delinquent list was ever made, or that the comptroller ever examined, compared or corrected any delinquent list as required by section 7669—(Revised Statutes, 1879, sec. 6824), or that any back tax book was ever made and authenticated or required by section 7671.   Revised Statutes, 1879, sec  6826.  (e) If plaintiff relies, as to a back tax book, upon a compliance with section 7699 (Acts of 1887, p. 24), we contend that section is in conflict with section 53, article 4, of the constitution and is therefore void.

*Stone & Slevin* for respondent.

(1) The tax bill makes out a *prima facie* case and the burden is on defendant to prove substantial defect. Revised Statutes 1879, sec. 6837; Revised Statutes 1889, sec. 7682; *State ex rel. v. Rau*, 93 Mo. 126.   (2) The property upon which the tax in question was levied was not such property as should have been returned to the state auditor.   Revised Statutes 1879, sec. 6866; *State ex rel. v. Railroad*, 89 Mo. 98.   (3) The charter of St. Louis provides the method for assessment of property

in the city of St. Louis.    Art. 5, Charter of St. Louis.
(4) Sections 6824, 6820, 6834 and 6848, Revised Statutes
1879, in relation to making up tax books, were repealed
by act of March 30, 1877, so far as the city of St. Louis
was concerned.    Session Acts 1887, page 241.    (5)
And said act of March 30, 1877, is constitutional since
in its terms it is applicable to any city of the state having
300,000 inhabitants.    *State v.    Tolle*, 71 Mo. 645;
*Ewing v. Hoblitzelle*, 85 Mo. 64;    *State v. Hayes*, 88 Mo.
344;    *Rutherford v. Hamilton*, 97 Mo. 543;    *State ex rel.
v. Miller*, 100 Mo. 439.    (6) A special act is not
repealed by a general one unless the two are irrecon-
cilably inconsistent.    *State ex rel. v. McDonald*, 38 Mo.
529;    *State v. Green*, 87 Mo. 583;    *City of Kansas v.
Johnson*, 78 Mo. 661;    *Manker v. Faulhaber*, 94 Mo.
430;    *State v. Clark*, 54 Mo. 17;    *State v. Vic Debar*, 58
Mo. 395.    (7) Informalities are cured by the statute.
Revised Statutes 1879, sec. 6710.    (8) The suit was
filed by the proper attorney, under contract with the
collector, with the approval of the mayor.    Revised
Statutes 1879, sec. 6836;    Revised Statutes 1879, sec.
6893.    (9) The word "may" as used in section 6889,
Revised Statutes 1879, is directory, and its signification
"permissive."    Bouvier's Law Dictionary; *State ex rel.
v. Holt Co. C't*, 39 Mo. 521;    *School District v. Ster-
ricker*, 86 Ill. 595.

BLACK, J.—This is a suit by the collector of the
city of St. Louis to recover back taxes for the year
1885, levied upon property described in the petition as
follows:    "A certain lot of ground fronting four
hundred and twenty-three feet and three inches on an
alley in city block No. 2253 by a depth of one hundred
and fifty-four feet, bounded on the north by said alley,
and on the east, south and west by property of self."

The suit was brought against the defendant railroad company; and against Blackmer and Post, but was dismissed as to the latter. The case is here on the appeal of the railroad company.

It seems to be conceded that defendant paid the taxes levied for 1885 upon its property assessed by the state board for the assessment and equalization of railroad property; and the first question is whether the property is to be deemed a part of the property assessed by the board pursuant to sections 6866 to 6875, or whether it is local property within the meaning of section 6876, Revised Statutes 1879. If it belongs to the first class then it is evident that this suit must fail, for in that event the defendant has paid all taxes which could be legally levied on the property.

The agreed facts bearing upon this issue are these: By an ordinance of the city of St. Louis passed in June, 1881, the defendant obtained permission to lay and operate its main and side tracks on Gratiot street, upon the express condition that it purchased all of the real estate lying between given bounds south of that street. The defendant purchased the property upon which the taxes for 1885 were levied of Blackmer and Post on the 10th of April, 1883, and on the 13th of the same month leased it back to them for a period of eight years at an annual rental of $800. The lessees occupied the premises for manufacturing purposes when the property was assessed for taxes of 1885. It is further agreed that defendant purchased the property to comply with the ordinance, and for the additional reason ·that it needed it for side-tracks, depots, round-houses and other buildings necessary to the operation of a railroad; that Blackmer and Post would not sell the land to defendant, except upon the condition that they were allowed to retain possession for the term of the lease; that defendant purchased the property for railroad purposes, to· be

6     SUPREME COURT OF MISSOURI,

The State ex rel. Ziegenhein v. St. Louis & S. F. R'y Co.

used in connection with and as a part of its yards, and on which it intended and still intends to build terminal facilities; that at the time of the assessment for 1885 there were no tracks on this property, but since then defendant has laid its main track upon a part of it, and the balance is necessary for the future development of defendant's business.

1. By Revised Statutes, 1879, section 6866, it is made the duty of every railroad company to furnish the state auditor an annual sworn statement, setting forth the length of the road in this state and the length of double and side-tracks, with depots, water-tanks and turn-tables; the length of such road, double and side-tracks in each county, incorporated city, etc.; the total number of engines, cars and movable property, and the actual cash value thereof. It is then made the duty of the state board to assess, adjust and equalize the valuation of all such property of each company, and in doing this the board has the power to assess, adjust and equalize "any other property" belonging to a railroad company "of the kind specified in section 6866" upon which no returns have been made. It is also the duty of the state board to apportion the aggregate value of property before specified belonging to each company, to each county, city, etc., according to the ratio which the number of miles of such road in such county, city, etc., shall bear to the whole length of the road in this state. The amount so apportioned to each county and city is the assessment upon which taxes are levied.

Section 6876 provides: "All property, real, personal or mixed, including lands, machines and work-shops, round-houses, warehouses and other buildings, goods, chattels and office furniture of whatever kind, owned or controlled by any railroad company or corporation in this state, not hereinbefore specified, shall

be assessed by the proper assessors in the several counties, cities, incorporated towns and villages wherein such property is located, under the general revenue laws of the state, and the municipal laws regulating the assessments of other local property in such counties, cities, incorporated towns and villages, respectively, but the taxes on the property so assessed shall be levied, and collected according to the provisions of this article."

The property specified in section 6866, which is to be assessed by the state board, is that required to be returned to the state auditor, namely, the entire length of the road in this state and the length of double and side-tracks, with depots, water-tanks and turn-tables. This description taken by itself is not clear, but the uncertainty is, to a large extent, removed when taken in connection with section 6876. That section provides that all other property of the railroad company, real, personal, including lands, machinery and workshops, round-houses and other buildings shall be assessed by the local assessors. There can be no doubt but section 6866 includes the road, road-bed, bridges and that property actually used for the purposes of a right of way, but it is equally clear that it does not include lands used for shops, engine-houses, and warehouses. And we think it is equally clear that section 6866 does not include land which may have been purchased for future yard purposes, and which is in fact not used for such purposes at the time of the assessment.

A comparison of the two sections can lead to but one conclusion, and that is this, that the property in question did not fall within section 6866, but did fall within section 6876. The fact that Blackmer and Post refused to sell the property to defendant, except upon the condition that they were allowed to retain possession for

eight years, and the further fact that defendant pur-
chased the property in part for the purpose of being
admitted into the city of St. Louis, can have no influ-
ence whatever in determining to which class the prop-
erty belongs for the purpose of assessment and taxation.
This is a question which must be determined by a
construction of the two sections of the statute before
mentioned.

To show that this property was included in the
assessment made by the state board, counsel for defend-
ant pursue this line of argument: That under the
law the defendant had the power to take and hold all
"necessary grounds for depots and side-tracks," that
this power carries with it the right to anticipate the
needs and wants of the future, and that the word nec-
essary, in this connection, does not mean indispensable,
but includes the right to acquire and hold real prop-
erty which is suitable and. proper to accomplish the
purposes for which the defendant was organized, and
what is suitable and proper must, to a large extent, be.
left to the judgment and discretion of the directors.
There is no objection to this line of argument when
used to show what property the defendant has the
right to acquire and hold, but it furnishes no guide
whatever by which to construe the two sections of the
statute now in question. In the first place section
6866 does not speak of property *necessary* to the oper-
ation of the road. And, in the next place, the line of
argument pursued by counsel for the defendant over-
throws the result which they seek to reach, for it must
be manifest that under it land used for machine and
workshops, round-houses and warehouses would be
*necessary* for the use and operation of the road, while
all such property is clearly classed as local property by
force of section 6876.

In the argument of this case at the bar of this court much stress was laid upon an observation in *State ex rel. Tillery v. Railroad*, 89 Mo. 101, to the effect that section 6866 embraced the road-bed, all property connected with it, necessary to the operation of the road, and all the movable property of the company. The court then had under consideration that section and the section of the toll bridge act, and the language used was used with reference to the question whether the bridge there in question was a railroad bridge or toll bridge within the contemplation of the toll bridge law. Besides this it is evident the word *necessary* was not there used in that broad sense in which it may be properly used when speaking of the property which a railroad company may acquire and hold for railroad purposes.

The property here in question was not used for railroad purposes when assessed, but was in the possession of defendant's tenants, under an eight year lease, and used by them for manufacturing purposes, with the right reserved by the tenants to remove their buildings at the expiration of the lease. There is no claim made in this case that it was by any specific description returned to the state auditor, and the only claim is that it should be deemed and taken to be property embraced within that property assessable by the state board. That it did not fall within that class of property is in our opinion too clear to call for further remarks.

2. It is further insisted that, although the property in question was local railroad property within the meaning of section 6876, still the plaintiff cannot recover because the taxes were not extended in a separate tax book known as the "railroad tax book" as required by section 6881, and because a statement of the taxes was not certified to the defendant as required by section 6882.

The facts bearing upon the first of these objections are: The property was assessed in the name of the railroad company and of Blackmer and Post, lessees, by the board of assessors of the city of St. Louis, pursuant to sections 15, 16 and 19 of art. 5 of the city charter (2 Revised Statutes 1879, p. 1599). The assessment roll for 1885 when completed was composed of thirty-eight books. "Book 7," called "Company Book" was used for entering property belonging to associations, banks and companies; and the land in question was entered and the taxes thereon *extended* in this "Book 7". "Book 10" called "Railroad, Telegraph and Bridge Book" was used for entering real estate belonging to bridge and telegraph companies, and the real property of railroad companies not in the possession of lessees. The property in question does not appear in "Book 10."

From these facts it will be seen the taxes sued for were not extended on a "separate tax book to be known as the railroad tax book" as provided by section 6881 of Revised Statutes, 1879; and the first question is whether they should have been extended upon such a separate book.

By reference to the sections of art. 5 of the city charter before mentioned it will be seen that the board of assessors in the city of St. Louis may use as many books in making the assessment as shall be by them deemed best, and there is nothing in the charter requiring railroad property to be assessed in a separate book. And by section 26, the taxes, state, city, etc., are extended on the corrected assessment books, and there is nothing in this section requiring railroad taxes to be extended in a separate book.

By reference to the general law relating to the assessment and taxation of railroads, being article 8 of chapter 145, Revised Statutes, 1879, it will be seen

that section 6876 provides that what we have called local railroad property shall be assessed by the proper assessors in the several counties, cities, etc., "under the general revenue laws of the state and municipal laws regulating the assessment of other local property in such counties, cities, etc., but the taxes on the property so assessed shall be levied and collected according to the provisions of this article." It is therefore clear, that in assessing this property, the board of assessors properly followed the city charter, but the last clause of the section just quoted provides that the taxes "shall be *levied* and *collected* according to the provisions of this article." According to sections 6879 and 6880 the taxes are to be levied upon the assessed value of the road as certified down to each county by the state board, and also upon the assessed value of the local property assessed by local assessors. And section 6881 makes it the duty of the clerk of the county court to extend the taxes "on a separate tax book, to be known as the railroad tax book" in which he shall place, first, the valuation of the road-bed and rolling stock of each company as apportioned by the state board with the amount of the various taxes, stated separately; second, a description of the local property, and the valuation thereof, with the amount of the various taxes levied. Section 6898 provides: "All services required to be performed by county officers under this article, shall be performed by the corresponding officers of the city of St. Louis, and wherever the word 'county' occurs, the same shall be construed to apply to and include the city of St. Louis."

Enough has been said to show that there is a direct conflict between the charter of the city of St. Louis and the general law, so far as they relate to the method of *extending* the taxes levied upon railroad

property and the subsequent proceedings for collecting the same. We are then brought to inquire which procedure is to be followed. The legislature had and has the power to alter and amend the charter of the city of St. Louis. *Ewing v. Hoblitzelle*, 85 Mo. 78. Now article 8 of the general revenue law, relating to the assessment and taxation of railroads, was enacted by way of a revised bill at the revision of 1879. It professes to provide the method for the entire state for extending and collecting taxes on railroad property. It contains many new sections, and among them are sections 6881 and 6898 before mentioned. The last mentioned section in the most explicit terms makes the entire article applicable to the city of St. Louis. It is therefore perfectly clear that taxes on railroad property must be extended and collected in the city of St. Louis, in the manner pointed out in article 8 of chapter 145 of the general revenue law. These taxes should, therefore, have been extended on a separate tax book known as the "railroad tax book."

It was held in *Folkerts v. Power*, 42 Mich. 283, that where different rolls are required for different taxes, the placing of a tax on the wrong roll and omitting it from the right one was fatal to the tax. In this case the taxes were not extended upon a separate roll, as required by section 6881; no statement of the taxes was ever made out and certified to defendant as required by section 6882; the railroad tax book was never delivered to the collecting officer as required by section 6883. The failure to comply with these provisions of the law is fatal to a recovery by the plaintiff. Indeed the only answer made to these and other objections is that the general laws do not apply to the city of St. Louis; while we have seen they do apply there as well as elsewhere in the state. It is not necessary to consider the many other minor

objections. It is sufficient to say taxes on railroad property in the city of St. Louis should be extended and collected in the manner pointed out in article 8 of the general law.

Section 6866 was amended in 1883, and sections 6881 and 6882 were amended in 1885, as will be seen by reference to sections 7718, 7733 and 7734, of the Revised Statutes, 1889, but the amendments do not change the law in respect of any matter before considered, and hence we have made reference to the general revenue law as found in Revised Statutes, 1879. The judgment is reversed. All concur, SHERWOOD, J., in the result. BARCLAY, J., concurs in reversing.