59 P.(2d) 351

ATCHISON, T. & S. F. RY. CO. v. TOWN OF SILVER CITY et al.

No. 4138.

Supreme Court of New Mexico.

June 22, 1936.

Reid & Iden, of Albuquerque, for appellant.

J. H. Shettler, of Silver City, for appellees.

BRICE, Justice.

The appellant filed a bill in the district court to enjoin the collection of certain taxes assessed and levied by the appellee upon appellant's property situated within the corporate limits of the appellee town. Appellee answered alleging that under a special charter granted to that town in 1878 it had authority to assess and levy such taxes, and such authority had never been repealed by the Legislature. To this answer a demurrer was directed, which was overruled by the court. The appellant stood on its demurrer, and an order accordingly was entered dismissing the bill, from which this appeal is prosecuted. It is agreed by the parties that the sole question to be determined is one of law, whether the authority given to the appellee by a special charter granted by the Legislature of New Mexico in 1878 has been repealed by any general law providing for the assessment of all. railroad property in the state of New Mexico by a state equalization board or by the state tax commission.

Appellee town was created by a special charter in 1876 (Laws of Territory 1876, c. 59). By chapter 38 of the New Mexico Territorial Session Laws of 1878 the charter of 1876 was repealed and a new special charter was granted in which that municipality was given the power to assess, levy, and collect taxes on real and personal property, and to enforce the collection of delinquent taxes; and provision was made for the appointment of all officers necessary for the assessing, levying, and collection of taxes. The appellee does

not question the authority of the legislature to amend its charter or to enact general laws so inconsistent with any provision thereof that it would be, to that extent, impliedly repealed; but does contend that no such legislation has been enacted. It is stated by appellee in its brief:

"What appellee maintains, and here undertakes to show, is, not that the legislature could not abrogate the charter power in question, but that no legislation has ever been enacted which either does or evinces a legislative purpose to abrogate the said charter power."

In 1897 the then existing tax laws were amended (chapter 12, N.M.Session Laws 1897) conferring the authority of "fixing the valuation upon all property belonging to railroad[s]," etc., upon the state board of equalization, which valuation it was provided should be certified to the boards of county commissioners of the several counties of the state in which railroad property (and other property to be so assessed) was located, and further provided, "and such assessments and valuation when so made and certified shall be final and binding upon all county officials throughout the Territory, and they shall have no right to alter or change the same in any particular." Section 1. Also, that "all acts and parts of acts in conflict herewith are hereby repealed," (section 6) but contained no special repealing clause affecting appellee's charter.

By chapter 81 of the New Mexico Session Laws of 1913 it was provided, among other things, that the state board of equalization "shall ascertain the true value of all property belonging to railroad, * * * used by such companies in the operation of their railroad. * * * When such true values are finally determined, and not later than the first day of February of each year, it shall be the duty of said Board to fix a valuation upon all such property for the purpose of taxation * * * and such valuation when so fixed and certified shall be final and binding upon all taxing officials throughout the state, and they shall have no power to alter or change the same in any particular." Sections 1, 3.

It was further provided that it was the duty of the assessor of each county to list all property for taxation at the valuation so fixed by this board. There was no repealing clause to this act.

By chapter 54 of the New Mexico Session Laws of 1915 a state tax commission was created with the authority to "determine the actual value of all property belonging to railroads, * * * within the State of New Mexico, which is used in the operation of their lines, * * * and shall certify to the assessors of the respective counties in which any of the above mentioned property is situated, the actual value of such property in such county. * * * The assessor shall place the values so certified upon the assessment roll of his county for the year for which such valuation is so made, and the values so determined and fixed by the Commission shall be final and binding upon all tax officials in the state." Section 4.

There was appended a general repealing clause only.

Chapter 133 of the New Mexico Session Laws of 1921 revised and compiled all tax laws. By article 5 thereof (section 501 et seq.) provision is made for a state tax commission whose duties and authority among other things, are:

"(1) Shall determine the actual value:

"(a) Of all property belonging to or leased by, any railroad, telegraph, telephone, and transmission company within the State of New Mexico, which is used in the operation of the lines;

"(b) Of the shares of the * * * banks; * * *

"(2) Shall certify:

"(a) To the local assessor in the respective counties in which any of the property included in 1 (a) is situated or located, the value of such property, found and determined as hereinafter provided, including any allocated values of rolling stock; * .* *

"(3) The actual value so determined, when certified by the commission, shall be final and binding upon all tax officials of the State. Each assessor shall place the actual values so certified upon the assessment, roll of his county for the year for which determined, and taxes shall be levied thereon in the same manner as in case of other property." Section 502.

By section 503 of the act the manner of valuing · railroad property is specifically provided for; that is, the state tax commission is required to accept the Interstate Commerce Commission's valuation thereof and the value of the rolling stock, etc. The act contains an express repeal of certain sections of laws existing at the time it was passed, as well as a general repealing clause, but no part of the charter of appellee town was expressly repealed.

Chapter 1, N.M.Territorial Session Laws of 1880, was the first general law for incorporating municipalities; this was followed by chapter 39 of the N.M.Session Laws of 1884, a comprehensive act to incorporate cities, towns, and villages, and prescribing their powers generally. This act, as amended or added to since, is chapter 90 of New Mexico Sts.Ann.1929. The original act provided that cities or towns incorporated by special charters could abandon such organization and incorporate under the general law, and this is the law today (section 90-2801, Sts.Ann. 1929), but appellee has held to its old charter and the Legislature has never expressly modified it with respect to its powers of taxation.

The question to be decided is whether either of the general acts, to which we have referred, granting the power to fix values of railroad property for taxing purposes to state boards or commissions, repealed appellee's charter to the extent that it must accept such value for taxing purposes on railroad property situated within its corporate limits. If so, then it must have been by the act of 1897, as the legal

effect of the four acts, regarding the matter in dispute, are all substantially the same; though apparently appellee has exercised this power (rightly or wrongly) until this time.

Aside from the rules that repeal by implication is not favored (Cortesy v. Territory, 6 N.M. 682, 30 P. 947, 19 L.R.A. 349); that where two statutes cover in whole or in part the same matter and are not absolutely irreconcilable, it is the duty of the court, if possible, to give effect to both; that it will not be presumed the Legislature intended to repeal a prior statute unless the last statute is so broad in its terms and so clear and explicit in its language that it shows it was intended to displace the prior one (Territory v. Digneo, 15 N.M. 157, 103 P. 975); another rule of construction which applies particularly to special charters is: A general statute will not impliedly repeal a prior local law or special statute or charter unless there is such a positive repugnance between the two that they cannot stand together or be consistently reconciled. Chilson v. Jerome, 102 Cal.App. 635, 283 P. 862; Wood v. Board of Election Commissioners, 58 Cal. 561; Commonwealth v. Matthews et al., 303 Pa. 163, 154 A. 359.

Canons of construction are but aids in determining legislative intent [Nye v. Board of County Com'rs, 36 N.M. 169, 9 P.(2d) 1023] and are not controlling if they lead to a conclusion, which by the terms or character of the legislation manifestly was not intended.

We will follow appellant's argument in assuming that if appellee's charter was repealed, it was by the act of 1921 quoted. This statute, in so far as it affects this case, may be epitomized as follows: The state tax commission shall determine the actual value of all property belonging to, or leased by, any railroad company, which is used in the operation of its lines, and shall certify to the local assessor in the respective counties in which any of such property is situated or located, the value of such property, found and determined as hereinafter provided. The actual value so determined when certified by the commission shall be final and binding upon all tax officials of the state.

"Each assessor shall place the actual values so certified upon the assessment roll of his county for the year for which determined, and taxes shall be levied thereon in the same manner as in case of other property."

Appellant contends, first, that "the collective noun 'all' leaves nothing for the county assessor or the town authorities of Silver City to value." We do not agree to this. It is true it leaves nothing for the county assessor to value, but in fixing the value of railroad property for state and county purposes "all" of such property must be valued. It is entirely consistent with appellee's charter that all of the mentioned property should be valued for state and county purposes. There is no indication by any language in the act that the valuation was intended to apply to cities

and towns. The state tax commission is required to certify such value to the local assessors in the respective counties, etc. Assuming that the use of the singular noun "assessor" would ordinarily include the town assessor of appellee, yet the further provision that each assessor is required to place the actual value so certified upon the assessment roll of his county, "and taxes shall be levied thereon in the same manner as in case of other property," indicates that the assessor referred to was the county assessor only.

Under the general law for incorporating cities, towns, and villages, the values fixed on property for state and county tax purposes are adopted as the values for such municipal tax purposes; otherwise there is nothing in this law to indicate its provisions apply to cities, towns, and villages incorporated under general laws; and certainly nothing to indicate it repeals appellee's charter power to value such property for taxation.

It is not inconsistent with appellee's charter that the state tax commission has authority to value all of appellant's property and certify such value to the county assessors of the state, and that such assessors are required to place such valuations upon the assessment rolls of the counties. All other property in Grant county is required to be placed upon the assessment rolls by the tax assessor of that county, and valued for taxing purposes; but that fact does not deprive appellee of its power to assess such property and fix its own values thereon as authorized by its charter. The only apparent inconsistency between this statute and the appellee's charter is the sentence: "The actual value so determined, when certified by the commission, shall be final and binding upon all tax officials of the State." But this must be construed in connection with the whole act. "All tax officials of the State" has reference to all those officials whose duties are connected with the subject-matter of the act, which is limited to fixing the value of such property and certifying such value to the respective county assessors of the state. When that value is placed on the assessment rolls of the counties, all tax officials are bound by it as it there appears, but it could not go further than this and bind the tax officers of appellee, as the values of property placed on Grant county's tax rolls do not bind the appellee in valuing property for taxation.

A very similar question was decided by the Supreme Court of Missouri in the case of State ex rel. Kansas City, St. J. & C. B. Ry. Co. v. Severance et al., 55 Mo. 378, 386. The city of St. Joseph was organized under a special charter with authority to assess and levy taxes. An act (Session Acts 1871, p. 56) was passed by the Legislature providing that railroad property should be subject to taxation for state, county, municipal, and local purposes and for that purpose valued by the state equalization board. Returns were required to be made (as under the New Mexico law) by the officials of the railway companies; and thereupon a hearing was provided to determine values for taxing

purposes. The following portion of the act (section 8) is material here:

" 'The board shall apportion the value of all lands, work-shops, depots and other buildings belonging to each railroad company to the counties, cities or incorporated towns in which such lands, work-shops, depots and other buildings are situate, and the aggregate value of all other property of each railroad company shall be apportioned to each county, city or incorporated town in which such road shall be located, according to the ratio which the number of miles of road completed in such county shall bear to the whole length of such railroad.' "

The court stated:

"Not only does the board complete and ascertain the value in their assessment, but it is made their duty when the assessment is arrived at, to apportion the value of all lands, work-shops, depots and other buildings belonging to each railroad company to the counties, cities or incorporated towns in which such property is situate. If it were intended that the cities and towns should still have the privilege and power of again assessing the property under their municipal ordinances, for what purpose was the law enacted? The provision apportioning the lands, work-shops, depots and other buildings to the municipalities, under such a construction, would be a mere nullity and amount to nothing more than unmeaning verbiage. We must suppose, that the legislature meant something, and that they intended what they said, and

that therefore all the property was to be assessed by the board, and that they were to ascertain the value within the limits of any city, and transmit that amount as the proper assessment in favor of the city, and that their action in this regard was exclusive of all other officers, either State or municipal. This construction is obvious, else the act has no efficacy."

But the New Mexico statute makes no reference to valuations for taxing in municipalities, and without some indication in the act that it so applied, we are not authorized to extend the power.

The same question was raised in State ex rel. Ziegenhein v. St. Louis & San Francisco Ry. Co., 117 Mo. 1, 22 S.W. 910, 912, in which the charter of the city of St. Louis was involved, but the court stated: "The last-mentioned section in the most explicit terms makes the entire article applicable to the city of St. Louis. It is therefore perfectly clear that taxes on railroad property must be extended and collected in the city of St. Louis in the manner pointed out in article 8, c. 145, of the general revenue law."

But the New Mexico law in no way indicates that it applies to Silver City, or for that matter to any municipality, and is quite different from the Missouri statute.

Irrespective of the canons of construction which provide that a general statute will not repeal by implication a local law or special charter unless there is such a positive repugnance between the two that they cannot stand together or be consistent-

ly reconciled, the act itself fails to provide further than for the valuation of appellant's property by the state tax commission, the placing of such valuation upon the assessment rolls of the counties in which it is situated and making such value binding on all tax officials. Under no theory of law could it be said that the charter power of appellee to value property within its corporate limits has been repealed.

The judgment of the district court of Grant county will be affirmed and the cause remanded.

It is so ordered.

SADLER, C. J., and HUDSPETH, BICKLEY, and ZINN, JJ., concur.