**82 P.2d 789**

**PATTEN v. CORBIN et al.**

**No. 4357.**

Supreme Court of New Mexico.

Sept. 7, 1938.

Joseph F. Woodbury, of Silver City, for appellant.

C. C. Royall and Hubert O. Robertson, both of Silver City, for appellee.

BRICE, Justice.

The question is whether a purchaser of property at a sale thereof for state, county and district taxes, · takes title free from claims for taxes previously assessed and levied, by a town organized under a special charter.

The appellee sued appellant Corbin as record owner, and the town of Silver City as one claiming a lien, to quiet title to certain tracts of land situated within the corporate limits of the town of Silver City, a municipal corporation organized under a special charter of comprehensive powers, granted by the legislature in 1878. From a judgment for plaintiff, defendant Silver City alone appealed.

Among the powers granted are the following: "Section 1. The council shall have power by ordinance to levy and collect taxes, and they may authorise the collector of said town to seize and sell the personal property of a person liable for taxes, in the same manner and under· the same conditions and restrictions as personal property· is now, or may be required

to be seized and sold under executions issued on judgments at law, the council shall also have power by ordinance to provide for assessing and taxing real estate in said town and for selling the same for taxes."

By another section of the charter provision is made for redeeming the property; and for issuing tax deeds conveying unredeemed property "which shall vest in the grantee, his, her or their heirs and assigns, the title to the real estate therein described, * * *." Authority is given the town council to levy and collect a tax not to exceed one-half of one percent in any one year, upon all taxable property within the limits of the town; also to make all ordinances "necessary or proper for carrying into execution" the numerous powers specified in the act.

The town council, by ordinance, established a complete system of local law for assessing, levying and collecting taxes on property within its corporate limits; one section of which is in part: "Sec. 20. Every tax levied according to the provision of this ordinance shall have the force and effect of an execution against the person and property assessed and taxes upon real estate are hereby made a lien thereon from the date of the levy thereof * *."

Taxes were assessed and levied by the town council for the years of 1929 to 1936 inclusive, on the property in question, and have not been paid; the amount of which including penalties and interest, is $1960.-57. During the same years there was assessed and levied against this property, state, county and school district taxes aggregating $1537.27, of which amount $835.-36 were taxes levied for the year of 1930. These taxes were not paid; and pursuant to Sec. 141-705, Sts.1929, a certificate of tax lien was duly and legally issued against the property taxed. Thereafter, this lien was foreclosed by proceeding in the district court of Grant County, and the property sold to the County Treasurer of Grant County, Trustee; the sale confirmed by the court, and a tax deed was issued to the county treasurer on July 15, 1933, all as provided by law.

After the period of redemption had expired a proceeding was had in the district court of Grant County for the sale of this land, as provided by Sec. 141-714, Sts.1929, in which it was ordered sold. At a sale held as ordered, the appellee became the purchaser, and thereupon a deed was duly issued to him.

It is conceded by the appellants that if the town of Silver City has no lien, by virtue of any statute or its ordinance providing therefor, to secure its taxes on real estate, then the case should be affirmed; as otherwise a complete title in fee simple, passed to appellee.

■ Liens to secure taxes did not exist at common law (Knowles v. Temple, 49 Wash. 595, 96 P. 1), and if no provision is made in the charter of Silver City, or by subsequent legislation, authorizing this town to create or provide by ordinance for liens (Quimby v. Wood, 19 R.I. 571, 35 A. 149; O'Connell v. Sanford, 256 Ill. 62; 99

N.E. 885), and if no statute has created such lien (Frankel v. Blank, 205 Iowa 1, 213 N.W. 597; 3 Cooley on Taxation [4th Ed.] Sec. 1230; 6 McQuillen on Municipal Corporations, Sec. 2563) no tax lien exists against the property to secure the taxes of Silver City.

■ Taxes are not liens on real estate unless expressly created or provided for by statute, State v. O'Neil, 55 N.J.L. 58, 25 A. 273; Jaffray v. Anderson, 66 Iowa 718, 24 N.W. 527; Phelan v. Smith, 22 Wash. 397, 61 P. 31; Case Threshing Mach. Co. v. Bentson, 57 S.D. 244, 231 N.W. 948; Thompson v. Henderson, 155 Md. 665, 142 A. 525, 58 A.L.R. 1213; Archibald v. Maurath, 92 N.J.Eq. 357, 113 A. 6; In re Hazeltine's Estate, 177 A. 108, 13 N.J.Misc. 152; McComb v. Robelen et al., 13 Del.Ch. 157, 116 A. 745; Tompkins v. Little Rock & Ft. S. Ry. et als., C.C., 18 F. 344; Hoge v. Garcia et al., Tex.Civ.App., 296 S.W. 982; Board of Commissioners v. Whitt, 74 Colo. 129, 219 P. 217; State v. Syst, 138 S.C. 162, 136 S.E. 392; Andrew v. Munn, 205 Iowa 723, 218 N.W. 526; Krug v. Hopkins, 132 Neb. 768, 273 N.W. 221, 110 A.L. R. 1071; or by implication so plain as to be equivalent to positive language. 3 Cooley on Taxation (4th Ed.) Sec. 1231.

There is no express authority granted to Silver City in its charter, or otherwise, whereby it was authorized by ordinance to provide for, or create, such liens; nor is there a statute expressly creating, or authorizing them. If the authority existed it is implied from the powers granted.

No doubt the legislature could have conferred upon the town all powers it possessed for the imposition and collection of taxes to support the municipality, but it did not do so. It delegated the power to provide by ordinance "for assessing and taxing real estate in said town *and for selling the same for taxes.*" If real estate could not be sold for taxes except by creating and foreclosing a tax lien, the implication would be so plain as that it would be equivalent to positive language. Appellant cites 3 Cooley on Taxation, Sec. 1230, as follows: "To authorize a sale of lands for taxes, a lien must exist, either created in terms by the statute itself, or established by some official proceedings under the statute."

The lien referred to as being "created in terms by the statute itself" has reference to the character of lien now being considered. A lien "established by some official proceedings under the statute" has reference to official proceedings authorized by statute to effect the creation of liens; or, perhaps, liens in the nature of execution liens arising from the seizure of land by the process or statutory power under which it is sold; ordinarily the warrant issued to the officer making the sale.

"The various proceedings which usually are required to precede a sale of the lands have been successively mentioned. Whether, when these have been taken, the officer will require any special warrant or process as his authority for proceeding to a sale, must depend upon whether something of that nature is provided for by law. In

some of the states a list of delinquent lands is made out and properly certified by the state auditor, or some other designated officer of the state, to whom the returns of delinquent taxes have been made, and this list is transmitted to the county or township official who by law is intrusted with the duty of making sales, and constitutes his warrant for doing so. In other states the statutes make other special provisions for the purpose. Whatever list, certificate, or warrant is prescribed by the statute is to be looked upon as in the nature of process, and it is indispensable that the officer should have it before taking any steps toward making a sale." 3 Cooley on Taxation, Sec. 1399.

■ Questions regarding such liens (if the process or means by which real estate is seized preliminary to sale for taxes creates a lien) are not involved in this suit. It is not claimed that a lien was created by any official act, or that the property has ever been seized or offered for sale for taxes; but the contention is that by virtue of Sec. 20 of the ordinance which we have quoted, a lien existed from the time of the levy of the tax by the town authorities. Neither the charter nor any statute authorized the city to create the lien contemplated by the ordinance, and therefore none exists.

■ It is unnecessary to decide whether a sale of real estate for taxes can be effected without creating a lien. It is enough to say that the town has implied authority to provide by ordinance the man-

ner of effecting a valid sale of real estate for the taxes it is authorized to levy against it; and this may be done notwithstanding the statute neither creates, nor delegates the power to the town to create, a lien to secure such taxes.

"The legislature has power to authorize and direct tax sales of land without a previous judgment or decree ordering the sale, but such power to sell real estate for delinquent taxes does not exist unless expressly conferred by statute. A municipal corporation cannot sell land for nonpayment of taxes unless the power so to do is expressly granted to it." 3 Cooley on Taxation, Sec. 1381.

The legislature of 1901 enacted: "That the provisions of Section 19 of Chapter 22, of the Acts of the Thirty-third Legislative Assembly of the Territory of New Mexico, entitled 'An Act to provide for the assessment and collection of taxes in the Territory of New Mexico,' Approved March 1st, 1899, declaring taxes a lien against real estate and personal property, shall be, and said provisions are hereby applied and extended to taxes levied and assessed by the authorities of any incorporated City or Town in the Territory of New Mexico, authorized by law to levy and assess taxes against the real estate and personal property situate in said City or Town for municipal purposes, whether incorporated under General or Special Act." N.M.L.1901, Ch. 85.

■ It is asserted that this law has not been repealed. But the act amended by it

was repealed by an act in 1913, c. 84 (Chisholm v. Bujac, 27 N.M. 375, 202 P. 126); and if this repeal did not carry with it the act of 1901, which merely extended its application, the latter was repealed by the general repealing and saving clause of the act adopting the New Mexico Codification of 1915, Code 1915, p. 1665; as it was not brought forward therein, and comes within the meaning of "acts of a general and permanent nature," which were repealed by it. The amendatory act amended the original act so that as amended it applied to all cities and towns in the state "whether incorporated under general or special act" and was "general and permanent" in its nature, and therefore has been repealed. Davy v. McNeill et al., 31 N.M. 7, 240 P. 482; In re Proposed Middle Rio Grande Conservancy District, 31 N.M. 188, 242 P. 683; Chisholm v. Bujac, supra; State v. Mirabal, 33 N.M. 553, 273 P. 928.

The general tax laws provide: "All taxes levied upon real estate shall be a lien thereon from the first day of January of the year in which the levy is made and continue as such until paid or foreclosed by sale. Taxes levied on all property shall be a personal obligation of the owner thereof, and a personal judgment may be rendered against him therefor. As between vendor and vendee, taxes levied against real estate shall be a lien from the time the taxes became delinquent, unless otherwise agreed between the parties." N.M.Sts.1929, Sec. 141-412.

If the legislature had intended that this statute should apply to taxes of towns with special charters, it could have so provided as it did in 1901. We held in effect in Atchison, T. & S. F. Ry. Co. v. Town of Silver City, 40 N.M. 305, 59 P.2d 351, that the general tax statutes did not apply to Silver City.

Without regard to that part of section 20 of the ordinance which provides that taxes upon real estate are made liens thereon, elaborate provision is made therein for the sale of real and personal property for taxes, after due notice to the taxpayer. The whole proceeding is entirely different from the laws of the state providing for such sales. The general laws have been often amended since the granting of Silver City's charter, and provide an entirely different procedure, and no part thereof, including that providing for liens on real estate, were intended to apply to strictly municipal taxes levied by towns with special charters. In the absence of any specific provision making the general tax lien statute apply to taxes levied by towns with special charters, it has no application. Salt Lake City v. Salt Lake County et al., 60 Utah 423, 209 P. 207; City of Collinsville et al v. Ward, 64 Okl. 30, 165 P. 1145; Bodine v. Okl. City, 79 Okl. 106, 187 P. 209; Keyes v. City and County of San Francisco, 177 Cal. 313, 173 P. 475; People's National Bank v. Ennis, Tex.Civ.App., 50 S.W. 632; Paepcke Leicht Lumber Co. v. Vantrompt, 137 La. 743, 69 So. 159; Atchison, T. & S. F. R. Co. v. Town of Silver City, 40 N.M. 305,

59 P.2d 351; 6 McQuillen on Municipal Corporations (2nd Ed.) Secs. 2563–2568.

The decree of the district court is affirmed.

It is so ordered.

HUDSPETH, C. J., and SADLER, BICKLEY, and ZINN, JJ., concur.