EMMA M. ARCHIBALD

*v.*

MARY MAURATH.

[Submitted February 8th, 1921. Decided February 21st, 1921.]

1. Taxes become liens on property only by express legislation and can be collected only in the manner provided by statute.

2. The existence of a tax lien must not be left to doubtful construction.

3. Under the Collateral Inheritance Tax act of 1894 such a tax is not a statutory lien, but simply creates a tax out of which a lien may be fashioned by following the procedure provided for that purpose.

4. A sale of decedent's real property by the executor in order to pay the collateral inheritance tax must be made within the time limited for sales of lands for the payment of decedent's debts, or, if afterwards, before alienation by the devisee.

5. Under the act of 1909 (*P. L. 1909 p. 325 § 5*), such taxes are in terms made a lien on real property until paid.

---

On bill, &c.

*Mr. Francis Lafferty,* for the complainant.

*Messrs. Scharringhausen & Hartpence,* for the defendant.

BACKES, V. C.

This bill for specific performance of a contract for the sale of land is resisted by the purchaser on the ground that the property is subject to liens for taxes imposed by the Collateral Inheritance Tax act of 1894. *P. L. 1894 p. 318.* The purchaser is willing to take the property, but insists that the liens be first satisfied or the purchase price abated.

The complainant derived title from Mary B. Peirce, George Richard Stammer and others. Peirce took by devise in 1901, and Stammer, by descent, in 1902. They conveyed to the complainant in 1906. In 1916 the surrogate of Essex county, upon the report of an appraiser, duly appointed, fixed the tax upon the devise to Peirce at $220, and upon the inheritance of Stammer at $266.67. It is conceded that the devise and inheritance were taxable under the act of 1894, but the question raised and to be decided is, Are the assessment liens upon the land?

Taxes become liens upon property solely from express legislation, and can be collected only in the manner provided by statute. *Linn* v. *O'Neil, 55 N. J. Law 58; Booth Brothers* v. *City of Bayonne, 85 N. J. Eq. 281.*

The act provides:

"1. * * * That after the passage of this act all property which shall pass by will or by the intestate laws of this state from any person * * * to any person * * * other than to * * * the father, mother, husband, wife, children, brother or sister, or lineal descendants born in lawful wedlock, or the wife or widow of a son, or the husband of a daughter, shall be subject to a tax of five dollars on every hundred dollars of the clear market value of such property, * * * and all administrators, executors and trustees shall be liable for any and all such taxes until the same shall have been paid as hereinafter directed; * * *

"2. * * * That when any person shall bequeath or devise any property * * * to a father, mother, husband, wife, children, brother or sister, the widow of a son, or a lineal descendant, during life or for a term of years, and the remainder to a collateral heir of the decedent, or to a stranger in blood, * * * the property so passing shall be appraised immediately after the death of said testator * * * at what shall then be the fair market value thereof * * * and after deducting therefrom the value of said life estate, or term of years, the tax prescribed by this act on the remainder shall be immediately due and payable * * * and * * * shall be and remain a lien on said property until the same is paid; * * *

"3. That where a bequest is given to an executor or trustee in lieu of commissions the amount in excess of reasonable allowance for commissions is taxable.

"4. That all taxes are due on the death of the testator.

"5. That a penalty shall be charged for non-payment of taxes.

"6. * * * That any administrator, executor or trustee having in charge or trust any legacy or property for distribution, subject to said tax, shall deduct the tax therefrom, * * * and whenever any such legacy shall be charged upon or payable out of real estate, the heir or devisee, before paying the same, shall deduct said tax therefrom and pay the same to the executor, administrator or trustee, and the same shall remain a charge on such real estate until paid, and the payment thereof shall be enforced by the executor, administrator or trustee in the same manner that the payment of such legacy might be enforced; * * *

"7. That all executors, administrators and trustees shall have full power to sell so much of the property of the decedent as will enable them to pay said tax, in the same manner as they may be enabled by law to do for the payment of debts of their testators and intestates, and the amount of said tax shall be paid as hereinafter directed.

"8. That the taxes shall be paid to the state comptroller.

"9. That the executors, administrators or trustees shall notify the state comptroller where property passes to a corporation or other than exempt relatives.

"10. For a refund of excess taxes paid.

"11. That stocks and bonds shall not be transferred by a non-resident executor without the payment of taxes.

"12. For refund for taxes erroneously paid.

"13. For the appointment of appraiser and his proceedings thereunder.

"14. Prohibits the taking of reward by appraiser.

"15. Gives the ordinary or orphans court jurisdiction relative to the tax.

"16. * * * That if it shall appear to the register of the prerogative court or surrogate that any tax accruing under this act has not been paid according to law, such officer shall issue a citation citing the persons interested in the property liable to the tax to appear before the ordinary or orphans court on a day certain, not more than three months after the date of such citation, and show cause why said tax should not be paid; the service of such citation and the time, manner and proof thereof, and fees therefor, and the hearing and determination thereon, and the enforcement of the determination or decree shall conform to the provisions of the law for the service of citations now issued by the ordinary or orphans court, and the hearing and determination thereon and its enforcement; and the register of the prerogative court or surrogate shall, upon the request of any prosecutor of the pleas or state comptroller, furnish one or more transcripts of such decree, and the same may be by them docketed and filed by the county clerk of any county in the state, and the same shall have the same effect as a lien by judgment.

"17. Originally and as amended by act of 1902, page 670, that state comptroller shall notify prosecutor of failure to pay taxes. Prosecutor shall proceed to collect. The act of 1902 authorizes the comptroller to retain other counsel for that purpose.

"18. Requires register of the prerogative court and surrogate to make quarterly returns to comptroller.

"19. State comptroller shall pay expenses of citation.

"20. State comptroller shall furnish record books and blank forms, etc., to register of prerogative court and surrogate.

"21. Fixes surrogate's fees.

"22. * * * That any person, or body politic or corporate, shall be entitled to a receipt from the state treasurer, countersigned by the state comptroller, for the payment of any tax paid under this act, which receipt shall designate on what real property, if any, of which any decedent may have died seized, said tax has been paid, and by whom paid, and whether or not it is in full of said tax, and said receipt may be recorded in the clerk's office of the county in which said property is situate, in a book to be kept by said clerk for such purpose, which shall be labeled 'collateral tax.'

"23. Repeals all acts inconsistent."

It will be observed that the only specific declarations that the tax is a lien, in certain events, are contained in section 2—upon remainders, when a gift or devise of a life estate is to certain persons in the exempt class, with remainder over to a collateral or stranger; and section 6, where a gift is a charge upon lands.

The phraseology of section 1, that "all property which shall pass by will or by the intestate laws of this state * * * shall be subject to a tax," does not import an impost upon the property, for our courts have construed the act as not a tax on property, but an exaction from persons taking, for the privilege of taking, by testament or statute, and as such sustained the constitutionality of the tax. *Neilson* v. *Russell, 76 N. J. Law 27; Eastwood* v. *Russell, 81 N. J. Law 672; Carr* v. *Edwards, 84 N. J. Law 667.*

To subject property to a tax does not imply a lien. The language of the General Tax act is that "all property, real and personal, within the jurisdiction of this state, * * * shall be subject to annual taxation at its true value under this act" (*Comp. Stat. p. 5076 § 2*), but the tax is impressed as a lien upon lands by section 49, which makes "all unpaid taxes on real property * * * on and after the twentieth day of December next after the assessment a first lien upon land on which they are assessed." *Comp. Stat. p. 5129.* While section 2 of the act subjects personal property as well to the tax, a lien does not attach to goods. *Broeck* v. *Jersey City, 44 N. J. Law 156.*

The only other indication of a lien is section 22, providing for the recording in the clerk's office of the county in which the property is situate, of receipts by the state treasurer, "which receipt shall designate on what property, if any, of which, any decedent may have died seized, said tax had been paid, and by whom paid, and whether or not it is in full of said tax." This would, by implication, at least, presuppose a lien, to be discharged of record, but I think the provision not inconsistent with the construction I put upon the act. The record of the receipt may operate in discharge of liens given by sections 2 and 6, or they may be acquittance barring sales of land under section 7. At all events we cannot predicate a lien upon the precarious language of this section (22). The existence of a tax lien must not be left to doubtful construction. *City of Camden* v. *Allen,* 26 *N. J. Law* 398.

The legislative scheme, as it appears to me, contemplated the tax to be against the individual legatee, devisee or heir, to be collected by the executor from legatees out of moneys passing through his hands, and from devisees and heirs, by selling the lands, as he would sell land for the payment of decedent's debts (section 7), and by an adjudication of the assessment by the ordinary or orphans court, and docketing the decree in the county clerk's office as a judgment (section 16) and executing it accordingly.

If this analysis is correct, it seems plain that the legislature did not design the tax to be a lien by virtue of the statute, and that the statute simply created a tax out of which a lien could be fashioned by following the procedure provided for that purpose.

It is too late now for the executor to make sale under the seventh section of the act. That must be done within the time limits for sales of land for the payment of decedent's debts. To have binding force the order for such a sale must be taken out within a year after decedent's death, or, if afterwards, before alienation by the devisee. Orphans Court act, §§ 81, 94 (*Comp. Stat. pp. 3838, 3845*); *Warwick* v. *Hunt,* '11 *N. J. Law* 1; *Skillman* v. *VanPelt,* 1 *N. J. Eq.* 511; *Bockover* v. *Ayres,* *22 *N. J. Eq.* 13. There is, therefore, no encumbrance on the title

on that score. And, as there was no assessment reduced to judgment when the complainant acquired title in 1906, there is no lien in that respect.

The view I entertain, that no lien was created by the statute, or intended, is influenced by the specific creation of liens in the two instances to which attention has been called, sections 2 and 6. The reasons for this special treatment evidently were—in the first, because the payment of the tax on the remainder may be indefinitely deferred, upon the giving of a bond, thereby increasing the danger of loss to the state; and in the second, legacies charged upon lands do not pass through the hands of the executor; they are of, yet apart from, the devise and payable by the devisee, but from whom the executor could not collect by a sale of the lands under section 7 without the lien.

Another consideration is, that upon reframing the law in 1909, the legislature changed its policy and expressly provided that "all taxes levied and assessed under this act on the transfer of any real property shall be and remain a lien on said property until paid." *P. L. 1909 p. 325 § 5.*

A decree for complainant will be advised.