ALBERT KRUG ET AL., APPELLEES, V. JOHN HOPKINS, SHERIFF OF DOUGLAS COUNTY, APPELLANT.

273 N. W. 221

FILED MAY 14, 1937.   No. 29908.

*James T. English* and *Jack W. Marer,* for appellant.

*Ziegler, Dunn & Becker* and *D. L. Manoli, contra.*

Heard before GOSS, C. J., ROSE, DAY, PAINE and CARTER, JJ., and MESSMORE, District Judge.

PAINE, J.

The district court granted an injunction to prevent the sheriff from selling certain personal property under five alias distress warrants issued by the county treasurer for unpaid personal taxes. The trial court also directed the sheriff to accept money in payment of alleged bids at a tax sale in the amount of $845 and to issue bills of sale to such purchasers. Motion for new trial being overruled, the sheriff of Douglas county appeals. The three errors relied upon for reversal are: That the decree is erroneous, is contrary to the evidence, and contrary to law.

It is stated in the brief of the appellant, as well as in the argument, that counsel have been unable to find any decision wherein the specific questions raised have been decided by this court, and, further, that increasing sales on distress warrants make it important that the appellant, sheriff of Douglas county, may know his exact status in conducting such sales. Therefore, while we cannot set out all the facts at length as they appear in the pleadings and bill of exceptions, yet we will give very briefly the evidence upon which this decision will be based.

The county treasurer issued and delivered to the sheriff the five distress warrants, attached as exhibits, for unpaid personal taxes. The sheriff, on the day he received them, levied upon the personal property described in each, and thereafter advertised the said personal property for sale by posting five notices, in conspicuous places in the precinct, that he would sell the said personal property at 10 a. m., February 19, 1936. On said date the sale was opened at the time and place stated. Two deputy sheriffs were

present. One of them testified, on page 90 of the bill of exceptions, as follows: "Q. What did he do in connection with the sale? Did he say it was a final sale, or did he say something else? A. At the conclusion of those remarks he said—he said, 'There will be no sale here unless bids are adequate, and unless the bids are sufficient to at least take care of the taxes involved.'"

About 11 a. m. the officer adopted the usual auctioneer methods and, taking up the sale of the property represented by each distress warrant separately, he finally received five bids, as follows:

1.  Penny Arcade, with building and all machines complete; Laughing Gallery building, complete; bid by Alfred Krug, $25; taxes due, $209.14. 2. Merry-Go-Round, complete, with building; "Whip" and eight cars, complete; Airplane, with planes, complete; Swanee River, complete, less boats; Fun House building and devices, complete; Stadium building, complete; Knock-out building, complete; Tumble-Bug, with cars, comptroller and motors, complete; bid by Alfred Krug, $500; taxes due, $6,714.68. 3. Bath-house, pool, diving boards and all equipment, complete; bid by Alfred Krug, $250; taxes due, $1,011.85. 4. Caterpillar Ride, complete; bid by Abe Slusky, $10; taxes, $387.94. 5. Scooter, with 12 cars, equipment and building, complete; bid by Abe Slusky, $60; taxes, $352.62.

The deputy sheriff, conducting the same, then announced that there was no sale, as the bids were inadequate. No bidder offered or paid any money, or made any protest to this public announcement, and the officer made the following return on each writ: "I did at 10 a. m. on the 19th day of February, 1936, offer the above described personal property for sale and the bids being insufficient and as the property was inaccessible for inspection by prospective bidders on account of snow to the depth of three to four feet, and being unable to readvertise and sell within the life of this writ, the same is returned without further action. Copy of above mentioned notice herewith returned."

There also appear as exhibits in the bill of exceptions the

five alias distress warrants issued by the county treasurer under date of February 25, 1936, under which another sale was legally advertised by the sheriff for March 12, 1936, against which sale appellees prayed for restraining order, which was granted by the district court, and this brings the entire proceeding before us for examination and decision.

The decree of the trial court states that the properties were "knocked down" and sold to the highest bidders, and that bills of sale shall be given the bidders by the sheriff, who is enjoined from further selling of said properties for taxes on the alias distress warrants.

The appellees insist that the sheriff was compelled to accept the highest bid made on February 19, 1936, and that inadequacy of such bid, in reference to the taxes due thereon, or the disparity between the bid and the market value of the property, should not be considered by the sheriff, and does not invalidate the sale.

The argument in support of this contention by appellees includes the following typical paragraph: "A solution of the case at bar presents no serious difficulty once we grasp the principle underlying distress warrant sales. In the final analysis the chief purpose of such a sale is to restore property to the tax rolls. Once taxes on property have accumulated to a point where the taxpayer is neither willing nor able to pay them, it may be said that such property has ceased to have existence and for the purposes of state revenue has become wholly unproductive. The state derives no further benefit from it. A tax sale is the answer to this predicament: the property by virtue of the sale is, so to speak, revived and once more put into circulation as a source of revenue to the state."

Several citations of cases involving sales of real estate given in support of appellees' theory are not controlling when applied to sales of personal property under distress warrants.

The process of distress warrants for the collection of taxes is a summary remedy provided by statute, which was in use in all the Colonies before the Revolutionary war,

and has always been held to constitute due process of law. "A distress warant is in the nature of an execution, and therefore seems at first blush a very arbitrary process, since it issues, under most of our tax laws, without any previous judicial determination of liability. * * * 'This method of collecting taxes is as well established by custom and usage as any principle of the common law. * * * Indeed, it is necessary to the existence of every government, and is based upon the principle of self-preservation.'" 2 Cooley, Taxation (3d ed.) 849.

There is, therefore, a very clear distinction between claims of the government for taxes and the claims of individuals, for all admit that the collection of taxes may be carried out by summary methods of proceeding, and it is even held that in the case of bulky articles of personal property a distress for taxes is good as against the taxpayer if made without an actual seizure of the property. Such sales under distress for taxes are limited to sales of personal property. 26 R. C. L. 383, sec. 340; *Den v. Hoboken Land & Improvement Co.*, 18 How. (U. S.) 272, 15 L. Ed. 372.

A tax is a lien on property only so far as expressly made a lien by the statute, and is limited to the property owned when the tax accrued. There is an important difference between a lien for real property taxes and for personal property taxes, for the lien on real property attaches only to each particular tract for the portion of the tax assessed against it, while in the case of personal property the lien for taxes is not confined to the specific articles assessed, but attaches to every variety of the personal property of the taxpayer, even where the property would be exempt from ordinary levy and sale. 26 R. C. L. 388, sec. 347; 61 C. J. 1041; Comp. St. 1929, sec. 77-1916.

Taking up the law of Nebraska, we find the paragraph of our statute relating to the question involved was first enacted as chapter 73, Laws 1903, and took effect September 1, 1903. It is section 77-1920, Comp. St. 1929, reading in part as follows: "When any goods and chattels have

been taken on any distress warrants, they shall be returned to the owner by the officer having distrained them immediately upon payment of the taxes due with interest and costs, but upon such owner's refusal or neglect to make such payment, or to give a good and sufficient bond for the delivery of the goods and chattels, the officer distraining shall keep them at the expense of the owner and shall give notice of the time and place of their sale within five days after the taking, in the same manner as upon execution in justice court. * * * Any surplus remaining above the taxes, charges of the keeping and fees for sale, shall be returned to the owner, and the treasurer shall on demand render an account in writing of the sale and charges." Procedure upon a sale upon a second execution in justice court is set out in section 21-1621, Comp. St. 1929.

The law directs that the sheriff shall proceed in the same manner as upon execution sales. "The distinction between execution sales and judicial sales has been consistently maintained in those jurisdictions in which execution sales are not required to be reported to the court for confirmation or approval. Sales under execution are made by an officer required by law to give bond and good security for the faithful discharge of his duties. * * * The law is the officer's only guide, and his sales are perfect and complete, and the title passes to the purchaser without the sanction or confirmation of a court." 10 R. C. L. 1288, sec. 83. See, also, 23 C. J. 615; Boynton v. Brown, 164 S. W. (Tex. Civ. App.) 893; 51 C. J. 120; In re Courthouse of Okmulgee County, 58 Okla. 683, 161 Pac. 200.

It is the opinion of this court that, in conducting a sale under a distress warrant, the sheriff has entire discretion as to the details of conducting the sale, providing he follows all of the requirements of the statute.

In one of our very early cases, this court said, in an opinion by Judge Cobb: "On the other hand, in the absence of a positive statute requiring it, it has never been the custom anywhere, in cases of sales made on writs of fi. fa. or execution sales, as distinguished from judicial sales

proper, to report them to the court for its approval or disapproval of the manner in which such sale has been made." *Bachle v. Webb,* 11 Neb. 423, 9 N. W. 473.

This is true in the case at bar because the sheriff gets his authority by virtue of the distress warrant alone, and is guided in making his sale by the statute, section 77-1920, Comp. St. 1929, rather than by the court. In a judicial sale the sale must be reported to, examined by, and confirmed by, the court. On the other hand, when the sheriff is satisfied with the bid made at a sale under a distress warrant, he has the sole jurisdiction and power to complete the sale.

"The sheriff has a material advantage over an ordinary litigant, in the legal presumption that the official acts of a sworn officer, done in the execution of his duty, are properly and rightfully done. * * * His adversary is always handicapped by the *onus probandi,* the necessity of overcoming the presumption in favor of the sheriff, and is therefore at a serious disadvantage." Murfree, Sheriffs, sec. 925.

Discretion, when vested in an officer, does not mean absolute or arbitrary power. It must be exercised in a reasonable manner, and not maliciously, wantonly and arbitrarily to the wrong and injury of another. This rule is applicable to all officers who are called upon to perform functions in their nature quasi judicial while acting within their jurisdiction and the legal scope of their powers as fixed by law. *Taylor v. Robertson,* 16 Utah, 330, 52 Pac. 1.

It is the intention under distress warrant sales that the taxing authority receive at least the tax, penalties and costs, for the officer should not sell property levied on for a grossly inadequate or a merely nominal price, but should return the writ with a statement that the property was not sold for want of bidders, or should postpone the sale. Where a sale is adjourned, bids made prior to such adjournment are impliedly rejected. 10 R. C. L. 1311, sec. 108.

In a California case the court was asked to set aside for

gross inadequacy of price a tax sale made of moving picture equipment for $83.69 to cover taxes of $80.69. It appeared that the plaintiff had leased sound equipment of the value of $1,500 to T. Miwa for a term of years, which he installed in the Lyceum Theatre in Fresno. The lease gave him possessory right and required him to pay taxes, which he failed to do. The defense was that property could not be sold for taxes which had not been assessed to its true owner. In the opinion we find this statement: "We do not believe that the price which was bid and paid can be controlling in cases of this kind. The law contemplates that the selling price shall at least equal the tax, penalties and costs. The sale is for the benefit of the taxing body and it is expected that the price will bring it out whole. This is the first concern in tax sales, and not that the owner receive the reasonable value of his property." *RCA Photophone Co. v. Huffman,* 5 Cal. App. (2d) 401, 42 Pac. (2d) 1059.

Other cases may be cited which, although not strictly in point, tend to support this decision. *DeMoulin Loan & Investment Co. v. McLain,* 107 Neb. 858, 187 N. W. 123; *Conway v. Nolte,* 11 Mo. 52; *Shaw v. Potter,* 50 Mo. 281; *Hooper v. Castetter,* 45 Neb. 67, 63 N. W. 135; *Weber Showcase & Fixture Co. v. Kaufman,* 45 Ariz. 397, 44 Pac. (2d) 158.

In the conduct of such a sale the property must be sold openly and to the highest bidder, and the officer is responsible for seeing that opportunity be given for competitive bidding, and if for any good and sufficient cause he decides to adjourn the sale to a later definite time, it is proper, and if he does not exceed the authority conferred upon him by the distress warrant, he is fully protected in all of his doings thereunder. 27 Am. & Eng. Ency. of Law (2d ed.) 815.

Statutory proceedings governing the sale of personal property must be strictly followed by the officers. This covers the giving of the notice required by statute, the time and place and conduct of the sale, and, for any good

and sufficient reason the officer may adjourn the sale from time to time, which adjournment must be for a definite time, and if for any reason the first sale failed, the officer may again seize the property and sell the same. 61 C. J. 1050.

In *Stuard v. Southern Engine & Boiler Works*, 100 Miss. 895, 57 So. 218, a tax collector sold an entire sawmill plant worth several thousands dollars for $54 taxes against it. In declaring this sale to be void, the court said: "It would have been very easy for the tax collector to have sold some part of this machinery, which would have brought this small amount of taxes, without sacrificing the whole mill plant by such a sale. * * * The disproportion is so shocking that the sale must be held to have been in excess of the power of the tax collector to sell."

"How far he might, from a regard to the defendant's interests, be required or authorized to postpone a sale where the goods would be palpably sacrificed, is another question; but as to the plaintiff in the execution, it is clear, that unless the sheriff is guilty of fraud or neglect, he is not answerable for merely proceeding to the sale of the goods as required by his writ, though they bring an inadequate price." *Lynch v. Commonwealth*, 6 Watts (Pa.) 495, 31 Am. Dec. 490.

Questions similar to those involved in this case have been before courts in *Porter v. Yakima County*, 77 Wash. 299, 137 Pac. 466; *Brooks v. Rooney*, 11 Ga. 423, 56 Am. Dec. 430; *Lantron v. Jos. Greenspon's Sons Iron & Steel Co.*, 70 S. W. (2d) (Tex. Civ. App.) 247; *Bull v. Gowing*, 87 N. H. 75, 174 Atl. 58; and in *Wilberg v. Yakima County*, 132 Wash. 219, 231 Pac. 931, 41 A. L. R. 184, there are set out six rules governing the proper manner for the sale of personal property on tax liens.

As was said in effect in *J. K. Lumber Co. v. Ash*, 104 Wash. 388, 176 Pac. 550, the law was complied with in the matter of assessment and sale and everything that it provided for was done. All the notices required were given. The proceedings appear to be as contemplated by statute,

and there is no reason for this court to read into the law requirements not there. To do so would tend to make the collection of taxes by distress warrants a matter of such difficulty as would interfere with securing public revenue and add to the requirements which the legislature has deemed sufficient to protect the property owner who has failed to pay his taxes in time.

This court will not criticize a sheriff for refusing to accept a bid for $500 made on a Merry-Go-Round complete, with building; a Whip, with eight cars, complete; an Airplane, with planes, complete; a Swanee River, complete, less boats; a Fun House building and devices, complete; a stadium building, complete; a Knock-Out building, complete; a Tumble-Bug, with cars, comptroller and motors, complete; upon which the taxes legally assessed and due thereon amounted to $6,714.68. The Constitution of Nebraska, section 4, art. VIII, provides: "Nor shall commutation for such taxes be authorized in any form whatever." And the sheriff must not accept such a ridiculously low bid as would subject him to be criticized for violating a constitutional provision against the commutation of taxes.

Our attention has not been called to any provision of our statute requiring the sheriff to make any report to any court in sales under tax distress warrants, and until such requirement is shown we will hold that the legislature has placed sole discretion in the sheriff to conduct such sales with full authority in the premises.

The decree of the trial court, enjoining sale under the alias distress warrants, and directing the sheriff to issue bill of sale to said bidders, is hereby reversed and the action dismissed.

REVERSED AND DISMISSED.