**DEPOSITORS TRUST COMPANY**

v.

**CITY OF BELFAST · et al.**

Supreme Judicial Court of Maine.

Sept. 22, 1972.

Locke, Campbell & Chapman by Harry N. Starbranch, Augusta, for plaintiff.

Eaton, Glass, Marsano & Hammond, by Thomas W. Hammond, III, Belfast, for defendants.

Before DUFRESNE, C. J., and WEBBER, WEATHERBEE, POMEROY and WERNICK, JJ.

WEATHERBEE, Justice.

The Plaintiff brought this 80B action in the nature of an appeal from the refusal of the Assessors of the City of Belfast to abate taxes which were assessed upon the personal property of the Plaintiff (other than the vault and safe deposit boxes) situated in its branch office in that city for the tax year of 1969. Plaintiff alleged that it had paid the State tax assessed upon the value of its bank stock for that year as provided under 36 M.R.S.A. § 4752. This bank stock tax, the Plaintiff alleges, is in lieu of a local tax on its personal property (other than vaults and safe deposit boxes) and it asserts that the personal property tax was therefore illegally assessed.

The Defendant answered, denying jurisdiction of the Court to entertain the appeal because of the failure of the Plaintiff to have furnished the assessors with a true and perfect list of its estate not exempt from taxation as provided by 36 M.R.S.A. § 706, and disputing Plaintiff's contention that the personal property tax was illegally assessed.

The Plaintiff then moved for summary judgment pursuant to M.R.C.P., Rule 56 on the basis of the pleadings and an affidavit establishing the Plaintiff's payment of the bank stock tax.

The Presiding Justice granted Plaintiff's motion for summary judgment and ordered the personal property tax abated and Defendant has appealed.

In our opinion the Superior Court had jurisdiction *to* determine the Plaintiff's appeal.

In 36 M.R.S.A. § 841 the Legislature has authorized municipal tax assessors to abate taxes "provided the taxpayer has complied with section 706".[1] Section 706 bars the taxpayer from applying for an abatement unless he has, after notice to do so, furnished the assessors with a list of his polls and estates *not by law exempt from taxation.* Although it had received notice, the Plaintiff furnished no such list.

In Holbrook Island Sanctuary v. Inhabitants of Town of Brooksville, et al., 161 Me. 476, 214 A.2d 660 (1965) we found that consideration of the jurisdictional issue leads inevitably to the merits of the case. We held that if the property was exempt, there was no necessity of filing the list before seeking an abatement.

The Defendant agrees that a person not liable to taxation at all is not required to file the list as a prerequisite to applying for an abatement but the Defendant contends that the Plaintiff owned *some* indisputably taxable property in the City, such as real estate, and was therefore required to bring in a list of property *not* exempt from taxation in order to claim on appeal that the assessors had assessed some of its property which *was* exempt from taxation.

Here, it should be borne in mind that the Plaintiff does not contend simply that this particular property is over-valued but rather that it should not have been assessed at all. It seeks not a partial but a complete abatement. If the Plaintiff's position that this property is exempt is correct, neither section 706 nor the assessor's notice obligated or even invited him to include it on such a list. If, in fact, the Plaintiff does own *other* property in Belfast, which *is* subject to taxation—which the record does not disclose—the filing of a list of such other, taxable property could hardly be relevant to the assessor's duties as to tax-exempt property.

1. 36 M.R.S.A. § 706. "Taxpayers to list property, notice, penalty, verification

Before making an assessment, the assessors shall give seasonable notice in writing to all persons liable to taxation in the municipality to furnish to the assessors true and perfect lists of their polls and all their estates, not by law exempt from taxation, of which they were possessed on the first day of April of the same year.

The notice to owners may be by mail directed to the last known address of the taxpayer or by any other method that provides reasonable notice to the taxpayer.

If any person after such notice does not furnish such list, he is thereby barred of his right to make application to the assessors or the county commissioners for any abatement of his taxes, unless he furnishes such list with his application and satisfies them that he was unable to furnish it at the time appointed.

The assessors or any of them may require the person furnishing the list to make oath to its truth, which oath any of them may administer, and any of them may require him to answer in writing all proper inquiries as to the nature, situation and value of his property liable to be taxed in the State; and a refusal or neglect to answer such inquiries and subscribe the same bars an appeal to the county commissioners, but such list and answers shall not be conclusive upon the assessors.

If the assessors fail to give the notice required herein the taxpayer is not barred of his right to make application for abatement, provided that upon demand the taxpayer shall answer in writing all proper inquiries as to the nature, situation and value of his property liable to be taxed in the State; and a refusal or neglect to answer such inquiries and subscribe the same bars an appeal, but such list and answers shall not be conclusive upon the assessors."

In our opinion the Legislature in enacting section 706 did not intend that the failure to file a list of its property subject to taxation should bar the taxpayer from using the abatement process to attack the assessment of property which the Legislature has declared is completely exempt from taxation. The Court had jurisdiction to entertain Plaintiff's appeal, the merits of which we will now consider in the light of the interrelation of two statutes.

36 M.R.S.A. §§ 602 and 603 authorizes Defendant's taxation of personal property of the Plaintiff, used by Plaintiff in its business situated in Belfast, unless exempt from taxation.

36 M.R.S.A. § 4752 provides for the imposition of a state tax upon the assessed value of the stock of trust companies and banking institutions formed under federal law and doing business in the state.

The State Tax Assessor is authorized to determine the value of the stock of the bank and then to deduct therefrom the assessed value of the bank's real estate, vaults and safe deposit boxes. (The value of the bank's personal property is not so deducted.) He thus determines the value of the shares of stock and assesses a tax of 15 mills upon it which is paid by the bank. Annually the State Treasurer must return the tax assessed upon shares owned by non-residents of the state or by corporations to the municipality where the bank is located, but° the taxes collected on shares owned by resident stockholders is returned to the municipalities in which the resident stockholders reside.

■ Two facts become obvious. One is that, as the value of a bank's personal property is one of the elements entering into the value of shares of its stock, the imposition by the City of a tax upon the personal property would amount to a second assessment against the value of the personal property. The second is that the City of Belfast's plight doubtless typifies the impact upon municipal tax revenues as a result of the recent trend in bank stock ownership. When stock in trust companies was largely locally owned, most of the revenues were enjoyed by the town where the bank was situated. With the proliferation of branch banks and of bank stock holding companies, it is clear that the return of this desired tax revenue is shifting to a few larger cities which are the locations of the parent banks and the holding companies which own the stock in the local banks.

In 1905 the bank stock tax statute was substantially as it was when the Presiding Justice ruled in the present case.[2] The authority for municipalities to tax personal property was also virtually the same. At that time the stock of the Livermore Falls Trust and Banking Company was taxed at its just value to the owners of the shares. The bank also owned, as its own personal property and as part of its assets, certain shares in other banks. The assessors of East Livermore Falls, where the bank was situated, assessed a tax upon this stock as personal property of the bank. The sole issue was whether this amounted to a double taxation which was not intended by the Legislature.

The Court found that the imposition of the personal property tax would have the practical effect of imposing two taxes upon the value of the shares which the Defendant bank held as its personal property. The Court said:

" . . . It is elementary that no tax can be imposed without express statutory authority, that such authority is to be construed strictly against the State, and particularly that no double tax burden shall be imposed on any person or property unless the statutes so clearly require it that no other construction is possible in reason. . . . " Inhabitants of East

---

2. R.S. 1903, Chap. 9, §§ 29 to 34 provided that bank stock should be assessed by the municipalities to owners who are residents of the state in the towns where they reside and to non-resident owners in the towns where the bank is located.

Livermore v. Livermore Falls Trust & Banking Company, 103 Me. 418 at 424, 69 A. 306 at 308–309 (1907).

The Court examined the relevant statutes and found substantial Maine precedent for its conclusion that the Legislature had not intended these statutes to be construed as authorizing double taxation of bank property. It said:

"The court had already held, and more than once, that a tax upon its personal property to a corporation and another tax at the same time upon its shares and its shareholders was double taxation not authorized by the law. Since these decisions the legislature has not in any statute declared explicitly and specifically that in other cases than those named a tax shall be assessed to a corporation upon its personal property in addition to the tax upon its shares. On the contrary, since those decisions the legislature has at least twice re-enacted the statutes upon this subject in substantially the same language. This is to be regarded as an expression of the legislative · intent for the court's interpretation of the statutes to stand as the law. Tuxbury's Appeal, 67 Me. 267." Inhabitants of East Livermore v. Livermore Falls Trust & Banking Company, supra at 429, 69 A. at 310.

Since this construction of the statute by the Court the Legislature has met many times and the statutes under consideration have been re-enacted. The method of assessment and collection of the bank stock tax has been changed by amendment but although the state (instead of the municipality) now assesses and collects the tax, the proceeds from the collection of the tax on shares owned by stockholders who are residents of the state still enriches the treasury of the municipality where such stockholders reside. Although presumably mindful of the East Livermore decision, the Legislature has not seen fit to amend the bank stock tax law to specifically exclude a bank's personal property as a factor in the State Tax Assessor's determination of value of shares of bank stock or to make clear an intention that it explicitly authorizes the imposition of a double taxation upon some part of the property of owners of bank stock.

On the contrary, in 1970 the Legislature had before it L.D. 1775 which, if enacted, would have repealed the Bank Stock Tax law. Although the legislators were made aware in debate that the Court's interpretation of the Bank Stock Tax law precludes the municipalities from taxing the banks' personal property and that trends in Maine banking toward mergers and bank stock holding companies is resulting in the shifting of this revenue from the towns where the local banks are situated to the municipalities where the holding companies are located,[3] the Legislature refused to change the statute, and left it intact as construed in *East Livermore*.

We, too, realize that changed banking practices have altered considerably the impact of the Bank Stock Tax upon municipal tax collection since *East Livermore*. However, these decisions as to distribution of funds collected through the Bank Stock Tax and the advisability of permitting municipalities to tax the personal property of banks which are subject to the Bank Stock Tax are matters within the province of the Legislature and the Legislature has made its position clear.

Appeal denied.

ARCHIBALD, J., did not sit.

All Justices concurring.

---

3. Remarks of Representative Emilien A. Levesque, 3 Me.Leg.Rec., 104th Legislature, 1st Spec. Sess., 1970 at 432.