CAPITOL BANK & TRUST COMPANY

v.

CITY OF WATERVILLE and
Federal Trust Company.

Supreme Judicial Court of Maine.

Aug. 13, 1975.

Sanborn, Moreshead, Schade & Dawson, by Peter T. Dawson, Augusta, for plaintiff.

Shiro & Jabar, by John P. Jabar, Waterville, for defendants.

Before DUFRESNE, C. J., and WEATHERBEE, POMEROY, ARCHIBALD and DELAHANTY, JJ.

DUFRESNE, Chief Justice.

Capitol Bank & Trust Company (the Bank), pursuant to the terms of an escrow agreement entered into with the defendant City of Waterville (the City), deposited with the defendant Federal Trust Company the sum of $15,701.42 to guarantee the payment of certain taxes for the years 1968, 1969, and 1970 which the City claimed one Phil J. Gullifer, doing business as Phil's Auto Sales, owed it on his stock in trade consisting of mobile homes. Thereafter, the Bank instituted an action wherein it sought a judicial determination of the rights of the parties by way of declaratory

judgment and a return of its escrow deposit with interest and costs. The Superior Court (Kennebec County) found for the Defendant, City of Waterville, and ordered the escrow moneys turned over to the City. The Bank appealed the Superior Court judgment. We sustain the appeal.

The events leading to the escrow agreement may be summarized as follows:

Gullifer was in the business of selling mobile homes in the City of Waterville. On March 17, 1969 he entered into a floor-plan financing agreement with the plaintiff Bank. The security instrument was recorded on July 14, 1970. Claiming that Gullifer was in default in his obligations under the terms of the agreement, the Bank, on August 17, 1970, commenced repossession proceedings through the writ of replevin and bond. Ancillary proceedings in aid of the replevin action resulted in a temporary restraining order issued on August 18, 1970 to forestall interference from Gullifer and his employees. Robert W. Palmer, Jr., in his capacity of Administrator, Director of Finance and Tax Collector for the City of Waterville, was also interested in seeing that the Gullifer stock in trade be not removed from the sales lot of Phil's Auto Sales for fear that the taxes owed to the City might not be collectable. Early on the morning of August 18, 1970 two cruisers of Waterville police officers pulled up and blocked the entrance to the lot. Following instructions from Mr. Palmer, the officers advised the Bank's representative and the deputy sheriff executing the replevin writ that no more trailers would be permitted to be removed from the lot. The Bank was then given notice that the City of Waterville contemplated the distraint of Gullifer's property in satisfaction of past due taxes.

This confrontation led to the execution of the following agreement between the Bank and the City:

"WHEREAS, the City of Waterville has personal property taxes against Phil's Auto Sales, (Philip J. Gullifer, Proprietor) in the amount of $15,701.42 made up of 1968 taxes of $2,233.65, audit number 348, interest $30.02; 1969 taxes of $5,658.75, audit number 347, interest $362.10 and 1970 taxes in the amount of $7,416.90, audit number 364.

WHEREAS, the Capital Bank and Trust Company is now repossessing certain mobile homes from said Phil's Auto Sales pursuant to replevin.

WHEREAS, the City contemplates distraining said property and the parties wish to permit the bank to have possession of said property without affecting in any way the city's rights of distrain.

NOW THEREFORE, the parties covenant and agree as follows:

1. The city foregoes its right to distrain and sell under Title 36, Section 996 in order to permit the bank to take possession under said replevin.

2. The bank agrees that the city shall not be prejudiced by the fact the bank has taken possession of said property pursuant to said replevin.

3. The bank agrees to guarantee to the city the payment of whatever of the above taxes, if any, determined to be due and otherwise collectable from said distraint process.

IN WITNESS WHEREOF the parties have hereunto set their hands this eighteenth day of August, 1970.

CITY OF WATERVILLE

By /s   Robert W. Palmer, Jr.

Its

Director of Finance

CAPITAL BANK AND TRUST COMPANY

By /s   Raymond R. Rourke

Its

(1st) Vice President and Auditor"

The deputy sheriff, thereafter, was permitted to resume the discharge of the Bank's replevin writ and complete the same without further interruption, no tax collector's warrant being served on Gullifer nor on the Bank.

■ While it may be the ultimate beneficiary of tax revenue, the City as such has no statutory power of distraint and has no direct control over the tax collection process. The power to distrain the property of delinquent taxpayers is statutorily vested in the tax collector under 36 M.R.S.A. §§ 991 and 996.

Section 996, which the tax collector of the City of Waterville could have invoked in the instant case provides in pertinent part:

"When a tax collector has reason to believe that there is danger of losing, by

1. The remainder of section 996 further provides:
"1. *Warrant issued.* He may issue the warrant provided for in section 994 prior to the expiration of the 3-month period; or
2. *When served.* He may in the warrant authorized by section 994, or in subsection 1, direct the officer to demand immediate payment, and if not so paid, the officer shall serve such warrant without further notice; or
3. *When notice period unexpired.* He may, after the issuance of such warrant, in writing direct the officer to whom the warrant has been issued to demand immediate payment, and if not so paid to serve such warrant without further notice notwithstanding any unexpired portion of the 10-day notice period required by section 995; or
. . . . . ."
36 M.R.S.A. § 994. *Collector may issue warrant of distress to sheriff*
"Any tax collector after 3 months from the date of commitment may issue his warrant to the sheriff of any county, or·his deputy, or to a constable of his municipality, directing him to distrain the person or property of any taxpayer not paying his taxes, which warrant shall be of the same tenor as that prescribed to be issued by municipal assessors to tax collectors with the appropriate changes returnable to the tax collector issuing the same in 30, 60 or 90 days."
36 M.R.S.A. § 995. *Warrant of distress; service, notice, fees*

delay, a tax assessed upon any taxpayer, at any time after commitment:

* * * * * *

4. *Distrain or arrest.* He may himself demand immediate payment and upon failure he may distrain the property or arrest the person of such taxpayer."[1]

■ The existence of the plaintiff's security instrument covering Gullifer's property did not immunize ·it from distraint, since 36 M.R.S.A. § 604 provides:

"When personal property is mortgaged, pledged or conveyed with the seller retaining title for security purposes, it shall, for the purposes of taxation, be deemed the property of the person who has it in possession, and it may be distrained for the tax thereon."

"Before the officer serves any such warrant, he shall deliver to the taxpayer or leave at his last and usual place of abode a summons from said tax collector stating the amount of tax due, and that it must be paid within 10 days from the time of leaving such summons. If not so paid, the officer shall serve such warrant the same as tax collectors may do and shall receive the same fees as for levying executions in personal actions.
. . . . . ."
36 M.R.S.A. § 991. *Distraint for taxes; procedure; sale*
"If any resident or nonresident taxpayer after a reasonable demand refuses or neglects to pay any part of the tax assessed against him in accordance with this chapter, the tax collector may distrain him in any part of the State by any of his goods and chattels not exempt from attachment for debt, for the whole or any part of his tax, and may keep such distress for not less than 4 days nor more than 7 days at the expense of the owner, and if he does not pay his tax within that time, the distress shall be openly sold at vendue by the tax collector after the 4th day but on or before the 7th day. The place of sale may be other than where the tax was assessed or where the property was seized. Notice of such sale shall be posted in some public place in the municipality where the tax was assessed and in the place where the sale is to be held at least 48 hours before the time set for sale."

■ The escrow agreement guarantees to the City "the payment of whatever of the above taxes, if any, [are] determined to be due and otherwise collectable from said distraint process," in consideration of the City's foregoing of its right to distrain. We note that this right by statute is vested in the tax collector and not in the City. Could the City by such an agreement dispense with the tax collector's distraint process and displace the Bank's priority position in favor of the City's collection of overdue taxes? We think not.

■ The United States District Court for the District of Maine did consider a similar problem of priority on two occasions. In *United States v. Town of Pittsfield,* 1969, D.Me., 302 F.Supp. 316, the Small Business Administration, an agency of the United States Government, held a chattel mortgage on certain items of personal property. After the mortgagor's default, the mortgagee (SBA) proceeded to foreclose its mortgage by auction sale, but, before the sale was commenced, the Town of Pittsfield notified the mortgagee that the municipality claimed a paramount lien on the property by virtue of the provisions of 36 M.R.S.A. § 604. Pursuant to an agreement between the parties, the sale was held and a sum representing the taxes due was placed in escrow subject to a determination of the rights of the parties. The District Court, interpreting Maine law, observed that our statutes did not establish a corresponding lien for taxes assessed against personal property as existed for taxes assessed against real estate and, since at common law taxes did not constitute a lien, none existed. The Court then decided that the public right to satisfy past due taxes by proceeding against such personal property does not take priority over prior recorded security interests until such public right has been perfected by distraint. Once a mortgagor or secured party legally gains possession of the mortgaged property, the power of the tax collector to

distrain is lost. In Pittsfield, since the power to distrain for delinquent taxes was never exercised, the mortgagee, having gained possession for foreclosure purposes, prevailed.

The converse situation was presented in *Hunter v. United States,* 1972, D.Me. 352 F.Supp. 5. In that case, the Small Business Administration, the owner of the chattel mortgage and supplemental security agreement, on January 13, 1972 gave notice of default and of an intended private sale of the collateral to take place on January 31, 1972. On the date of the planned sale, but before its occurrence, a constable of the City of Auburn, acting under a distress warrant from the tax collector of the City of Auburn, seized and physically took possession of the collateral to satisfy the taxpayer's unpaid taxes. By agreement, the seized property was released pending a judicial determination of the rights of the parties. In *Hunter,* the action for declaratory judgment was by the tax collector and the Court ruled that the Maine Legislature intended to provide municipal tax collectors with all the rights of a common law distress such as possessed by a landlord. The result was that the lien acquired by the taking of possession under the tax collector's distress warrant was superior to that of the prior chattel mortgage and security instrument held by the Small Business Administration which had not taken possession at the time of the seizure under the distress warrant.

In the instant case as in *United States v. Town of Pittsfield, supra,* the tax collector of the City of Waterville did not take the necessary steps under the statutes to establish a lien on the Gullifer property. The plaintiff Bank took possession for purposes of foreclosure as it had a right to do, absent a prior distraint by the tax collector. The agreement with the City possibly may have lulled the tax collector into inaction, but the City as such had no right to inter-

fere with the plaintiff's foreclosure proceedings.[2]

■ It is elementary that tax statutes are to be construed strictly against the taxing authority. *Depositors Trust Company v. City of Belfast,* 1972, Me., 295 A.2d 28, 30; *Inhabitants of East Livermore v. The Livermore Falls Trust & Banking Company,* 1907, 103 Me. 418, 424, 69 A. 306, 308–309. See also *Camp Walden v. Johnson,* 1960, 156 Me. 160, 165, 163 A.2d 356, 358. This rule of strict construction applies not only to statutes establishing the right to tax, but it also governs the construction of statutes formulating procedures for the collection of the tax whereby forfeitures of property may result. *McCarty v. Greenlawn Cemetery Assn.,* 1962, 158 Me. 388, 392, 185 A.2d 127, 129; *Town of Warren v. Norwood,* 1941, 138 Me. 180, 183, 24 A.2d 229, 231.

■ Statutory provisions allowing summary procedures for the collection of taxes are subject to the strict construction rule and will not be extended by implication; full compliance with every step or requirement in the taxing process from beginning to end is essential to the validity of such proceedings. *Peterson v. Moulton,* 1958, 120 Vt. 439, 144 A.2d 717; *City of St. Louis v. Carroll,* 1973, Mo., 494 S.W.2d 1, 4. Statutory provisions for the satisfaction of delinquent taxes by means of distress must be strictly followed by the executing authorities. *Krug v. Hopkins,* 1937, 132 Neb. 768, 273 N.W. 221, 110 A.L.R. 1071. See also 84 C.J.S. Taxation § 686a; 72 Am.Jur.2d State and Local Taxation §§ 866, 868.

Our own case, *City of Eastport v. Jonah,* 1936, 134 Me. 428, 187 A. 471, presents a telling example of the necessity for strict compliance with procedures established by statute for the collection of taxes. In that case, a statute authorized the *mayor* and treasurer of a city, the selectmen of a town or the assessors of a plantation to direct in writing that an action in debt be commenced in the name of the municipality to recover the tax. The Court held in that instance that a direction by the president of the city council, the *city manager* and the city treasurer (the action being taken after the change of the charter of the City of Eastport), to commence such legal action was not a compliance with the statute which required direction by the mayor and the action was properly dismissed. See also *Arsenault v. Inhabitants of Town of Roxbury,* 1971, Me., 275 A.2d 598, 599; *Baker v. Webber,* 1907, 102 Me. 414, 419, 67 A. 144.

■ The statutes which formulate the summary procedures available to enforce the collection of delinquent taxes assessed against Gullifer clearly give the authority and assign the power to distrain to the *tax collector.* The agreement between the Bank and the City, wherein "the city foregoes its right to distrain and sell," albeit stated to be under 36 M.R.S.A. § 996, purports only to bind the City of Waterville. The tax collector as such is not a party to the agreement. The Bank's guaranty of the payment of Gullifer's taxes to the City was limited to "the payment of whatever of the above taxes, if any, [are] determined to be due *and* otherwise *collectable from said distraint process."* (Emphasis ours). As the right to distrain is vested exclusively in the tax collector, the City had no more right or power to distrain Gullifer's property for unpaid taxes than the city manager in *City of Eastport v. Jonah, supra,* had to authorize a tax suit. Nor could the City by its promise not to exercise such power of distress bind the tax collector. The City cannot control the tax collector in the execution of the functions of his office.

2. We do not have to address the proffered problem in a case where the agreement to forego the distraint process was executed by the tax collector in his official capacity of tax collector, in relation to which we express no opinion.

In *Thorndike v. Camden*, 1889, 82 Me. 39, 19 A. 95, this Court stated:

"The statute gives it [the town] no control over the assessment or collection of any taxes. It is true the statute requires the town to appoint the assessors and collectors of all state, county and town taxes to be levied within its territory, but the town does this as the political agent of the state. The appointment could have been entrusted to any other agency. *These officers are not corporate agents. They are public officers, owing to the public, and not to the town alone, the duties imposed by statute. Only their appointment comes from the town. Their authority is from the statute, and they cannot be controlled by the town in the execution of that authority.*" Id. at 44, 19 A. at 96. (emphasis added).

See also *Dolloff v. Gardiner*, 1952, 148 Me. 176, 182–183, 91 A.2d 320; *Tozier v. Woodworth*, 1936, 135 Me. 46, 188 A. 771; *Hodsdon v. Weinstein*, 1925, 251 Mass. 440, 146 N.E. 675; *Burr v. City of Boston*, 1911, 208 Mass. 537, 95 N.E. 208; *Dunbar v. City of Boston*, 1873, 112 Mass. 75.[3]

■ The Revised Statutes define the duties and powers of the tax collector. The tax laws of this State outline how he may enforce tax obligations pursuant to his warrant. The law is formulated by the Legislature alone. The collector is not subject to the municipality and agreements made by the City which purport to limit or control his activities are not binding upon him. While an agreement similar to that entered into here might be sufficient to establish the priority of the public right if it were made by and in the name of the tax collector, upon which we intimate no opinion, it is clear from a reading of the statutes that such an agreement made in the name of a party having no authority to distrain or to control the public official who possesses such authority is totally ineffective to strip the Bank in the instant case of its priority position.

The entry will be

Appeal sustained. Case remanded to the Superior Court for entry of judgment for the plaintiff Bank in the amount of the sum deposited in escrow, together with interest and costs.

WERNICK, J., did not sit.

---

3. The tax collector, taking his direction from statute rather than from the municipality, is in a position similar to that of an assessor. In *Dillon v. Johnson*, 1974, Me., 322 A.2d 332, in defining the position which assessors hold with reference to the municipality which they serve, we were, in light of *Thorndike v. Camden*, 1889, 82 Me. 39, 19 A. 95, describing a public official whose authority paralleled that of a collector when we stated:

"They have certain responsibilities which are unique and distinct from those of other elected officials. Since their duties are defined by statute they are not subject to the direction and control of the municipalities in which they function. . . . Although assessors of taxes when selected by a city or town are public officials, there is no such nexus between them and the municipality as will bring into being the relationship of principal and agent." *Dillon v. Johnson, supra*, 322 A.2d at 334–335. (citations omitted).

See also *In re Maine Central Railroad Co.*, 1936, 134 Me. 217, 183 A. 844; *Town of Milo v. Water Company*, 1932, 131 Me. 372, 163 A. 163; *Brownville v. Shank Co.*, 1924, 123 Me. 379, 123 A. 170.