# FIRST NATIONAL BANK OF BOSTON

v.

## CITY OF LEWISTON.

Supreme Judicial Court of Maine.

Argued Sept. 30, 1992.
Decided Dec. 18, 1992.

tress sale for taxes assessed for the years 1990, 1991, and 1992. A copy of that notice was sent to the Bank. The Bank responded by a letter advising the tax collector that it held a first perfected security interest in all of Bates's assets. In that letter the Bank stated that it had no objection to the sale or disposition of the assets, but that the proceeds from the sale must be paid to the Bank. Although the Bank's counsel attended the distress sale and again maintained that the Bank was entitled to the proceeds of the sale, it did not bid on the property. The property was sold to the City, the high bidder, for $5,000. After the sale Bates still owed the City $360,971.95 in unpaid taxes. Although the Bank did not join the tax collector in the present action, the City has not questioned his absence. *See Capitol Bank & Trust Co. v. City of Waterville,* 343 A.2d 213 (Me.1975).

Eileen M. King (orally), Verrill & Dana, Portland, for plaintiff.

Ronald P. Lebel (orally), Scott J. Lynch, Rocheleau, Fournier & Lebel, Lewiston, for defendant.

Before WATHEN, C.J., and ROBERTS, GLASSMAN, CLIFFORD, COLLINS and RUDMAN, JJ.

ROBERTS, Justice.

Ancillary to its action for a declaratory judgment, First National Bank of Boston, claiming a security interest in property distrained by the City of Lewiston, filed a motion to preliminarily enjoin the City from selling the property and from dissipating the proceeds of a sale that had been held. The Superior Court (Androscoggin County, *Alexander, J.*) denied the motion. On the Bank's appeal from the denial, we affirm the decision of the Superior Court.

I.

In 1976 the Bank entered into a security agreement with Bates Fabrics, Inc., taking a secured interest in all of Bates's property. In 1992 the City's tax collector issued a notice of sale and notice of hearing for the sale of Bates's personal property as a dis-

II.

The City argues that this is an appeal from an interlocutory order, not a final judgment, and is thus barred from appellate review. We disagree. We have recognized that "appeals, in order to be cognizable, must be from a final judgment." *In re Erica B.,* 520 A.2d 342, 343 (Me.1987). There is no question that the Superior Court's denial of the Bank's motion for a preliminary injunction is an interlocutory order. It does, however, fall within the "extraordinary circumstances" exception to the final judgment rule.

In *Moshe Myerowitz, D.C., P.A. v. Howard,* 507 A.2d 578 (Me.1986), we stated that " 'since the final judgment rule is a judge-made prudential rule, we are not precluded from fashioning an additional exception where extraordinary circumstances warrant it.' " *Id.* at 580 (quoting *State v. Maine State Employees Ass'n,* 482 A.2d 461, 465 (Me.1984)). Such extraordinary circumstances here exist. The Bank's interest in Bates's assets is secured by the property that the City now holds. If the City is permitted to liquidate the entire stock of property, a later finding that the Bank was indeed the holder of a senior

interest would be hollow. These circumstances warrant our consideration of the merits of the present appeal.

## III.

■ Turning to the merits, it is necessary to decide whether the court erred in denying the Bank's motion for a preliminary injunction. The grant or denial of a motion for a preliminary injunction is reviewed for an abuse of the trial court's discretion. *See Department of Envtl. Protection v. Emerson*, 563 A.2d 762, 768 (Me. 1989).

The Bank argues that, although a lien was created in favor of the City when it distrained the property under 36 M.R.S.A. § 991,[1] the Legislature made clear in 36 M.R.S.A. § 612(9)[2] that the lien is junior to any perfected security interests that existed at the time of the enactment of section 612(9) in 1983. Since the Bank has alleged a perfected security interest since 1976 in the personal property owned by Bates, it argues that its interest has priority over that of the City.

The City, on the other hand, argues that a municipality has several options from which it can choose to collect overdue taxes. It can distrain personal property, arrest the delinquent taxpayer, initiate a civil action, or, as enacted in 1983, obtain a lien on the property under section 612. Although the City concedes that a lien on the personal property is created once the City distrains the property, it claims that such a lien is wholly separate from a lien created under section 612. As such, it is not subject to the priority provisions of section 612(9). We agree.

Sections 612 and 991 are different statutes, with different purposes. Section 612 creates a lien on the specific property that was taxed. The lien is simply a mechanism by which to collect the unpaid taxes on the very property for which the lien was created. Section 991, by contrast, is a summary collection process aimed at any property. Neither statute is dependent on the other. Thus, the section 991 collection procedure is not subject to the priority provisions of section 612. The question of the Bank's priority must be decided by other principles.

■ On this record, however, we do not decide whether the section 991 lien is subordinate to the Bank's interest. The Bank has failed to establish that a preliminary injunction would be appropriate in any event. On the record before us, we cannot determine whether the property distrained was the specific property on which the unpaid taxes were levied. Nor can we determine whether the Bank's security interest was perfected before section 612 was enacted by P.L.1983, ch. 403 (effective September 23, 1983). The trial court simply assumed so. More significantly, however, it appears that the Bank's consent to the sale may have had the effect of transferring, by agreement, its security interest from the property to the proceeds. At the very least, the court was warranted in concluding that the Bank had failed to estab-

---

1. 36 M.R.S.A. § 991 (1990) reads in relevant part:

   **Distraint for taxes; procedure; sale**

   If any resident or nonresident taxpayer after a reasonable demand refuses or neglects to pay any part of the tax assessed against him in accordance with this chapter, the tax collector may distrain him in any part of the State by any of his goods and chattels not exempt from attachment for debt, for the whole or any part of his tax, and may keep such distress for not less than 4 days nor more than 7 days at the expense of the owner, and if he does not pay his tax within that time, the distress shall be openly sold at vendue by the tax collector after the 4th day but on or before the 7th day.

2. 36 M.R.S.A. § 612 (1990) reads in relevant part:

   **Tax lien on personal property**

   **1. Lien.** There shall be a lien to secure the payment of all taxes legally assessed on personal property as defined in section 601, provided in the inventory and valuation upon which the assessment is made there shall be a description of the personal property taxed which meets the requirements of Title 11, section 9–402. Except as otherwise provided in this section, the lien, when perfected, shall take precedence over all other claims on the personal property and shall continue in force until the taxes are paid or until the lien is otherwise terminated by law.

   . . . .

   **9. Liens subordinate to security interests.** The lien authorized by this section shall be subordinated to security interests which were perfected before the effective date of this section.

**1032**

lish a likelihood of success beyond its claim to the $5,000 proceeds.

The entry is:

Order denying preliminary injunction affirmed.

All concurring.